# Reed *v.* Loosemore.

*Malicious prosecution—Probable cause—Malice—Collection of debt.*

In an action for malicious prosecution it appeared that one of the defendants, an agent of the other defendants who were a partnership, instituted a criminal prosecution against plaintiff for false representation in obtaining credit. The plaintiff was acquitted in the criminal court, and the costs imposed upon the prosecutor, which costs were not paid by him, but by some other party. The evidence showed that plaintiff was the treasurer of a corporation, and as such gave a check for goods furnished his company. He made no representations as to this check, and it was good at the time it was given, but was not deposited for collection until several days thereafter. In the mean time plaintiff's company ordered other goods and gave a second check. Neither of the checks were paid. It appeared that the prosecutor in the criminal suit had consulted the attorney of his employers as to the prosecution. This attorney had previously recovered a judgment on behalf of his clients against the company which had given the checks. *Held*, that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 25, 1899. Appeal, No. 75, Oct. T., 1899, by defendants, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1899, No. 719, on verdict for plaintiff, in case of Frank C. Reed v. A. G. Loosemore and Nelson Morris, Edward Morris and F. E. Vogel, trading as the Morris Western Beef Company and Nelson Morris & Company. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Trespass for malicious prosecution.    Before WHITE, P. J.

The facts appear by the charge of the court which was as follows :

The parties defendant are A. G. Loosemore and Nelson Morris, Edward Morris and F. E. Vogel, partners as the Morris Western Beef Company and Nelson Morris & Company. There was another partner named when the action was brought, Herbert N. Morris, but he has since died, and is not now a party. These parties named, except Loosemore, are charged as members of the firm known as the Morris Western Beef Company, and also of the firm of Nelson Morris & Company. The same partners carried on business in two places by these different names ; in Pittsburg, I believe, it was Nelson Morris & Company, and out in the East End they were doing business as the Morris Western Beef Company.

Loosemore was not a member of the firm, but he was their agent at one of these establishments. As the action is based upon the wrongful acts of these defendants, the jury may find a verdict against one, or against more than one, or against all of the defendants named, if you find they were all guilty of the wrongful act charged.

It is an action for a malicious prosecution. It seems that Loosemore made an information against Reed, the plaintiff, charging him with obtaining certain things under false representations. The defendants were engaged in the beef business, and the plaintiff was the treasurer and manager of a corporation or firm by the name of the Home Supply Company, in Pittsburg, dealing in various things, and, among others, buying beef and selling it.

On June 16, 1897, the Home Supply Company was indebted to the defendant firms something over $200, and on that day the plaintiff, as the treasurer of that Home Supply Company, gave a check for the indebtedness at that time due. That check was not paid. It was not presented to the bank for payment until the 19th of that month. According to the evidence, the 16th was Wednesday. The check was not given directly by the plaintiff to the defendant firm, but was sent by the treasurer to the Pittsburg office of the defendants, and then sent out to the East End.

There was a custom on the part of the defendant companies that if a bill due on Wednesday was not paid, they would not give any further credit; but after this check was given some other things were sold by the defendants to one of these establishments of the Home Supply Company, and on June 23 another bill came due, for which another check was given. These two checks were not paid.

Suit was brought against the Home Supply Company by the defendant firms for the two bills, the amount of the two checks, and judgment was obtained against the Home Supply Company on July 7, some three weeks or so after these checks were given. At that time other executions were out against the Home Supply Company, it seemed insolvent, and the defendants were not able to collect their judgment against it.

[On July 8, as Mr. Benham says, information was made against Reed for obtaining credit on false representations, made on June 16, when he gave the first check. The charge was that he, by false representations, induced the defendant company to give further credit to the Home Supply Company. That case was returned to the court of quarter sessions and Mr. Reed was there tried on that charge, of obtaining this credit under false representations. He was acquitted and the costs of the prosecution in that case put upon Loosemore, who was the prosecutor on the record, and the one who made the information. Mr. Loosemore says that he never paid any costs or attorney's fees. The record shows that he was sentenced to pay those costs. Somebody must have paid the costs, because, being in court at the time of his sentence, he would have been committed at once to jail if the costs were not paid.] [5]

After that the plaintiff brings this action, alleging that the prosecution was malicious, and that he sustained damages in consequence of it.

Two things are essential to sustain a suit of this kind: First, that the prosecution was without probable cause; second, that it was malicious. It is not necessary to prove express malice by positive and direct evidence. That is very difficult to prove in any case. Malice often is inferred from the circumstances of the case. Malice does not mean always spite, hate, ill-will; where there is an unlawful act or recklessness or carelessness, the law implies malice. Probable cause is such circumstances

as would induce a man of ordinary prudence to believe that the party has committed a criminal offense.

All criminal prosecutions are in the name of the commonwealth, not in the name of an individual. It is the commonwealth that is always the prosecutor in every criminal case. It is to protect the commonwealth from wrong, or to punish a criminal where the public is interested and for the public good. The law rather favors a party making an information charging a crime, because it is to the interest of the public that every criminal shall be brought to justice; and, therefore, when a party makes an information charging another with a crime, and it turns out in the end that he was not guilty of that crime, it does not justify a suit against the man who made the information, if he acted in good faith and upon reasonable ground for believing that a crime had been committed, and that this party was guilty of that crime.

What is the charge here? We have not in evidence the original information or the indictment in the court of quarter sessions. Somehow or another, it seems that those papers are lost. How they were lost does not appear here, but the clerk of the court of quarter sessions has testified that, after a diligent inquiry and investigation, he cannot find those papers. Therefore we have not before us the exact words of the indictment and of the information; but, from the evidence here, it seems that that information charged Reed with obtaining credit by a false representation. [What was the false representation? In all of these charges of obtaining goods under false representations there must be a lie, a falsehood, and that falsehood must have been known to be false by the party that made the representation, and it must have been for the very purpose of obtaining something, and have succeeded in obtaining that thing. Those are the essential elements to sustain a charge of obtaining goods under false pretenses.

The allegation is that that information charged Reed with falsely representing a check to be good, for the purpose of obtaining further credit. Now, the evidence here does not show that Mr. Reed made any representations whatever about that check. He did not give that check directly to the defendant firm. It was sent to one of the subagents, I believe, and by him, or some one, sent to the office. Mr. Reed said nothing about it, but accord-

ing to his testimony, and the testimony of the bank cashier, that check was good at the time it was given, on June 16, and if it had been presented to the bank on the 17th, that is Thursday, or had been presented on Friday, the 18th, it would have been paid; but the supply company got into some trouble, too many checks were drawn, and, on Saturday, when the check was presented to the bank, the bank refused to cash it. Is there any evidence that Mr. Reed gave that check for any false purpose? He gave the check, according to his testimony, in the usual way of giving checks, and firmly believed, according to his testimony, that that check would be paid; and if it had been presented a day or two after it was drawn, according to the testimony of the cashier, it would have been paid, so that there was no falsehood or wrongful act on his part, according to the cashier's testimony, in giving that check on June 16.] [6]

Did he give it for the purpose of getting additional credit? We have a principle of law of this kind, that, where a man thinks of instituting a criminal prosecution, he may consult a reputable member of the bar, and if he states all the facts of the case, gives a full statement to the attorney, and the attorney advises him that it is a case for a criminal prosecution, and, in pursuance of that advice, he commences the prosecution, that is a protection to him, and that is a wise provision of the law. It prevents men, if they are prudent, running into prosecutions or making charges recklessly. They ought to go first and talk to an attorney, and take his advice, and then they must state fully all the material facts in the case. If a man does that, makes the information, and afterwards it turns out that the party is not guilty, the advice of the attorney is his protection. That is a well settled principle of law. But he must make a full statement of the case, and unless he gives a full, candid statement of all the facts, it is no protection whatever to him.

[Now, when Mr. Loosemore went to see his attorney, Mr. Benham, did he give all the material facts of this case, or did he state some things that were not true? The information says that Reed falsely represented that check to be good, and that he did it for the purpose of obtaining additional credit. Do the facts justify the attorney in giving the advice that he did, or did Loosemore make a full statement of the case?

The attorney is not responsible himself because he may make some mistake of the law; even if he does mistake the case, yet if he in good faith advises the prosecution, after hearing all the facts in the case, the party is protected. But the party must state all the material facts of the case.] [7]

[What interest had Mr. Reed in giving that check? He was simply the treasurer of this company; he did not obtain anything personally; it was no benefit to him for the Home Supply Company to get more meat, or to get further credit; he had no personal interest in it.] [8] What interest had Mr. Loosemore to make this information? He was not interested in this bill that the defendants had against the Home Supply Company; he was merely an employee of that firm, I think, managing one of their establishments. He had no personal interest, therefore, in making that information. Now this bears on the other question, gentlemen, whether these defendants, the members of that firm, are responsible. If the information was made without probable cause, the question is then, whether the verdict should be limited to Loosemore, or whether these other defendants are also to be held, and bearing on that is the fact that Loosemore had no personal interest whatever in the matter, and presumably he had no authority from the defendants to make that information, because, as the manager of a store, he would not be clothed with power to make an information binding the defendant firm. But how did he make that information, and under what circumstances? According to the evidence Mr. Benham was the regular attorney of the defendant firm—the collecting attorney for the firm—and he had gone to see Mr. Reed with Mr. Loosemore, to try to collect this bill; had had a conversation with Mr. Reed before this prosecution was begun. Mr. Benham, as attorney of the defendant firm, had brought suit against the Home Supply Company and got judgment against that company for their bill. After that this information was made. For what purpose, and why made against Reed, and why should Loosemore make the information? Neither Loosemore nor Reed had any personal pecuniary interest in this transaction. Now if Mr. Benham, as attorney for Nelson Morris & Company, commenced a prosecution against Reed, and as their attorney advised Loosemore to make the information, and the defendant firm, knowing of the information being

made by the advice of their attorney, continued to prosecute that case, and prosecuted it to trial in the court of quarter sessions, then Nelson Morris & Company would become parties to the prosecution, and be liable as defendants in this suit.

[As I have said, malice may be implied in many cases. There must be some proof, but not necessarily direct proof, of malice, because the two things—want of probable cause and malice—must combine to sustain a suit of this kind; but in many cases malice may be implied from the circumstances of the case. What was the object of this prosecution? Was it to collect this bill; to force Reed to pay this bill? If that was the object of it, it would be expressly malicious. No man has a right to begin a criminal prosecution for personal ends. It is only for the public good that a private prosecutor can make information, and where a party wants to collect a bill, or to force a party to pay a bill, and commences the criminal prosecution for the purpose of compelling the payment of that bill, without probable cause for a prosecution, it is a clear case of malice in law. There are perhaps too many informations made for false pretenses for the very purpose of compelling the payment of bills. This is a perversion of the law. The criminal law was never intended for the purpose of collecting debts, or compelling parties to pay debts. That is not the object of the criminal law. The object is to punish a man for doing wrong —to protect the public—and if a party, in order to frighten a debtor into paying a bill, commences a criminal prosecution, where there is no probable cause for it, in the hope that the terror of a criminal prosecution will compel the party to pay, it is a manifest, clear perversion of the law, and would be evidence of direct malice. It is for you to say, under all the evidence in this case, gentlemen, why this prosecution was instituted.] [9] Reed was not responsible for that debt. He was simply the treasurer of that company, and not liable at all for that debt; but if he committed a wrong, he might be punished criminally for that wrong. Neither had Loosemore any particular interest in making this information. He was not affected by the alleged wrong of Reed. Was it done, the information made, and the prosecution carried on by Nelson Morris & Company, through their agent, Mr. Benham? If so, they are the real, substantial defendants in the case.

[If you find that there was probable cause for this prosecution, your verdict ought to be for the defendants.   Even if you believe that there was not probable cause for the prosecution, if Loosemore made a full and fair statement of all the material facts in the case to Benham, in good faith, and he, in good faith, thought it was a case justifying a prosecution, your verdict ought to be for the defendants.   But if you believe, gentlemen, under the evidence, that there was not probable cause for this, but that this prosecution was instituted for the purpose of compelling Reed to pay that debt, your verdict ought to be for the plaintiff.]  [10]

[The plaintiff would be entitled to recover for the disgrace of a prosecution of this kind—it is an injury to his good name and reputation—and also for any loss in his business in consequence of it.   That would be called compensatory damages.  But if you believe from the evidence that this prosecution was instituted for the purpose of compelling Reed to pay that debt of the Home Supply Company you may go beyond compensation; you may give something by way of "smart money," in addition to compensation.]  [11]

Verdict and judgment for plaintiff for $2,300.   Defendant appealed.

*Errors assigned* were (5–11) above instructions, quoting them.

*Thomas Patterson,* with him *William M. Benham,* for appellant.—The rule is firmly established, if plaintiff can recover from the defendants in this proceeding, he must show that the criminal action was brought without probable cause : Emerson v. Cochran, 111 Pa. 619; Beihofer v. Loeffert, 159 Pa. 374 ; McClafferty v. Phillip, 151 Pa. 86.

Whether certain facts constitute probable cause must be determined by the court; but whether such alleged facts exist is for the jury to find: Brobst v. Ruff, 100 Pa. 91; Walbridge v. Pruden, 102 Pa. 1 ; McCarthy v. DeArmit, 99 Pa. 63 ; Laughlin v. Clawson, 27 Pa. 328; Beihofer v. Loeffert, 159 Pa. 374.

Probable cause does not depend on the actual state of the case in point of fact, but upon the honest and reasonable be-

lief of the party prosecuting: Smith v. Ege, 52 Pa. 419; Gilliford v. Windel, 108 Pa. 142; Seibert v. Price, 5 W. & S. 438; Grohmann v. Kirschman, 168 Pa. 189; Mitchell v. Logan, 172 Pa. 349.

When facts show probable cause, court should direct verdict for defendants: Laughlin v. Clawson, 27 Pa. 328; Sutton v. Anderson, 103 Pa. 151; Gilliford v. Windel, 108 Pa. 142; Neall v. Hart, 115 Pa. 347; Sloan v. Shoemaker, 136 Pa. 382; Madison v. Penna. R. Co., 147 Pa. 509; Cooper v. Hart, 147 Pa. 594; Mehaffey v. Byers, 151 Pa. 92; Nachtman v. Hammer, 155 Pa. 200; Mitchell v. Logan, 172 Pa. 349.

Undisputed facts of present case show probable cause.

*Henry A. Davis*, with him *William M. Galbraith*, for appellee.—When the facts are controverted and in some cases where the actual belief of the prosecution enters into the consideration of the question, the court can do no more than define what constitutes probable cause, and submit to the jury to find whether the constituents of it have been proved, or rather whether it has been shown that those facts were wanting which the law declares to be essential to justify a prosecution: Schofield v. Ferrers, 47 Pa. 194.

This court has always held that where a prosecution is started or carried on to procure the payment of a debt, neither malice nor the want of probable cause need be proven as the law implies both. Where it is to procure the payment of a just debt, honestly due, this implication may be rebutted by evidence, and where it is to enforce the payment of money not due, the presumption is conclusive, and cannot be rebutted by evidence: Prough v. Entriken, 11 Pa. 81; Schofield v. Ferrers, 47 Pa. 194; Schmidt v. Wiedman, 63 Pa. 173.

The advice of counsel does not furnish want of probable cause: Smith v. Walter, 125 Pa. 453.

OPINION BY MR. JUSTICE McCOLLUM, October 8, 1900:

The defendants prepared and presented fifteen points to be answered by the learned judge of the court below; seven of them were affirmed without qualification, five were refused because they included questions of fact for the determination of the jury, and three were refused without explanation or com-

ment. Four of the points refused constitute the first, second, third and fourth assignments of error. The remaining assignments are founded upon excerpts from the charge.

In determining whether the assignments of error should be sustained we must have recourse to the testimony in the case. It is noticeable at the outset of our examination of the testimony that no exceptions to it were taken by the defendants. This omission tends to show that they did not regard it as clearly inadmissible or inapplicable to the questions of fact to which it was directed. It may be said in this connection that a careful scrutiny and consideration of the testimony has satisfied us of its relevancy, and that the defendants exhibited good judgment in declining to take exceptions to it.

No erroneous instructions referring to malice and probable cause appear in the charge, and all the instructions relating to them and appearing therein are in harmony with settled law. Nothing appears in the charge as to other matters which can be justly designated as error. The same may be said of the answers to the points which were refused.

The relation of Loosemore to Nelson Morris & Company, the suit of the latter against the Home Supply Company for the recovery of the debt owing to it, the communications between Loosemore and the attorney of Nelson Morris & Company together with Loosemore's prosecution of Reed on a charge of false representation, were all matters for the consideration of a jury on the trial of the case at bar. Another matter pertinent to the questions of fact involved was the disposition of the suit against Reed in which the verdict was in his favor, and the costs of prosecution were put upon Loosemore, who admitted that he never paid any of the costs or attorney fees, and alleged that while the costs were paid he did not know who paid them. As the debt sued for was the property of Nelson Morris & Company, and Loosemore had no interest in it except such as an employee has in the affairs of his employer, his prosecution of Reed in the court of quarter sessions, without suggestion or direction from his employers or their attorney, was an extraordinary proceeding, and especially so when it is conceded that the costs were paid by other parties.

For the reasons stated herein we dismiss all of the assignments.

Judgment affirmed.