# Empire Implement Manufacturing Company *v.* Hench et al., Appellants.

*Principal and agent—Scope of agency—Evidence.*

Where the fact of agency is not questioned, the agent is a competent witness as to the scope of the agency.

Where a corporation places a person in charge of its general business in a particular city as manager or general agent, and holds him out by signs and other ways as manager or general agent, the company is liable on a contract made by such agent in the ordinary course of business, as business was conducted by such manager at the particular time and place.

*Evidence—Corporations—Treasurer—Minutes.*

Where a treasurer of a corporation is called as a witness as to circumstances leading up to the execution of a contract by the corporation, and it appears that the contract was not executed by the treasurer, and it also appears that the question as to whether the witness was treasurer, was immaterial on the main issue, it is not necessary to prove by the minutes of the board that he was in fact the treasurer.

*Contract—Rescission—Conditional acceptance.*

Where a person executes a contract with the owner of a patent, and the contract contains no reference to foreign patents, but by a letter with which the contract is inclosed it is stated that the paper was signed conditionally on the procuring of certain foreign patents, and shortly thereafter, and before the patents could be procured, the party executing the contract repudiates it on the ground of lack of authority in the agent who signed it, such party cannot thereafter in a suit on the contract, defend on the sole ground that the foreign patents had not been taken out.

Argued May 22, 1907.   Appeal, No. 174, Jan. T., 1907, by defendants, from judgment of C. P. York Co., Jan. T., 1905, No. 56, on verdict for plaintiff in case of Empire Implement Manufacturing Company v. S. Nevin Hench and Walker A. Dromgold, trading as Hench, Dromgold & Co.   Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ.   Affirmed.

Assumpsit for breach of contract.   Before WANNER, J.

At the trial it appeared that the contract in question was signed for the defendants by Philip Jones.

M. J. Dwyer, the treasurer of the plaintiff, was asked this question :

" Q. (By Mr. Glessner.) After you were incorporated, state whether or not you organized and went into business in the state of New York? A. Yes, sir; we did. Q. What office did you hold—do you now hold in the Empire Implement Company ? "

Mr. Cochran : Objected to.

" Q. (By Mr. Glessner.) What office did you hold in the Empire Implement Company ? "

Mr. Cochran : Objected to. It is not the best evidence of the fact that the witness held any office whatever; the minutes of the company are the best evidence.

The Court : What difference does it make unless he is the party who executed this contract. I don't think the question is material.

Mr. Glessner : Oh, well, it is not; just merely wanted to show his connection with the company.

The Court : I will overrule the objection, and seal an exception for the defendant. [2]

" A. I was treasurer of the company."

Philip Jones was asked this question :

" Q. (Witness shown paper marked No. 3.) Is this the contract between Hench & Dromgold and Philip Jones for the purchase of his business, and his agreement with the same ? Look at the contract and state what it is—or, state whether or not you signed the same and who executed it ? "

Mr. Cochran : Objected to.

The Court : What is the purpose ?

Mr. Glessner : This for the purpose of showing the employment by Hench & Dromgold Company to act as their general manager in New York for the firm of Hench & Dromgold Company. This, together with the verbal authority from Walker A. Dromgold, one of the members of the firm, and showing the powers of Mr. Jones as manager of the Hench & Dromgold Company—as manager and general agent of the Hench & Dromgold Company. For the purpose of showing the authority for executing the contract of paper No. 2. As one of the steps in sustaining the issue on the part of the plaintiff.

Mr. Cochran: Objected to; the paper being signed in the presence of an attesting witness; and the only legal way to prove the execution of the paper is by the production of the attesting witness. This witness is not competent to testify to the facts proposed to be adduced in this inquiry. Not evidence for the purpose offered, nor the best legal evidence of the facts to be proved.

The Court: We will allow you to prove the execution of the paper, and it will become a question on the offer of the paper whether—

Mr. Cochran: Your Honor will give me an exception.

The Court: Exception for the defendants. Make a specific offer.

Mr. Glessner: We propose to prove by the witness on the stand that Walker A. Dromgold in his presence, and himself, executed the paper in question, known as No. 3. For the purpose of showing the execution of the paper.

Mr. Cochran: Objected to as not the proper legal way to prove the execution of this document; it being executed in the presence of attesting witnesses, and those witnesses must be called, or their handwriting proved if they are dead or out of the jurisdiction.

Mr. Glessner: This paper was produced by the defendants upon call from the plaintiff in this suit. It was not in our possession until a few minutes ago.

The Court: I will allow the paper to be proven in that way, and give an exception to the defendants.

"Q. (By Mr. Glessner.) Look at the signatures and state whether or not you were present at the execution of that paper? A. I signed this; but Hench & Dromgold's signature was evidently made in York here because I see Mr. Eichelberger witnesses it. Mr. Corwin witnesses my signature. This is my signature here and that is Mr. Dromgold's signature. Q. State whether or not after the execution of this contract you had any conversation with Walker A. Dromgold concerning your duties as manager of their New York office?"

Mr. Cochran: Objected to. This paper being in writing cannot be modified or extended by parole, or changed in any manner by parole.

The Court: The plaintiff cannot alter or change the terms

of the written contract, but it has a right to show any additional instruction or powers afterward granted to witness by defendants ; the evidence is therefore admitted and an exception for the defendants. [3].

" Q. (By Mr. Glessner.) Witness now shown paper No. 2 and asked to look at the signature of Hench, Dromgold & Company, Philip Jones, manager. We now propose to prove the execution of said paper by Hench & Dromgold Company by Philip Jones, their manager, under the authority already proven. For the purpose of showing the execution of said contract."

Mr. Cochran : Objected to, that the authority of the witness to sign the paper not having been properly and legally proved this evidence is incompetent and illegal.

The Court : Is there a subscribing witness to this ?

Mr. Cochran : No, sir.

The Court : Then we will admit the question, and note an exception for the defendants. [4]

" A. I signed that. Q. (By Mr. Glessner.) In what capacity? A. Manager for Hench, Dromgold & Co., New York. Q. Do you know when you signed that ? A. I don't exactly know when I signed it. It is dated here April 24."

Mr. Mitchel : We offer to prove by the witness on the stand that the plaintiff, in making the contract in document No. 2, relied upon the apparent general authority of Philip Jones, who has signed the same as manager ; and to prove by another witness that the said Philip Jones was the general manager of the defendants, and as such, owing to the general custom of the trade of export of farming implements of the state of New York, had the general authority to bind his principals by contracts to purchase such as the contract in suit. This to sustain the issue on the part of the plaintiffs. The general authority is further evidenced by the heading of the letter paper of the defendants, and by the firm name inscribed upon the front door of their office in New York City. This to sustain the issue as to the agency of Mr. Jones, on the part of the plaintiff.

Mr. Cochran : Objected to as irrelevant, immaterial and incompetent, the contract between Mr. Jones and Hench, Dromgold & Co. being in writing, and the plaintiff not having

offered to prove the plaintiff inquired about Jones' authority nor the nature of his contract with Hench, Dromgold & Co. before entering into this agreement to sell grinders to Jones.

And further, that this is an attempt to introduce what was in the mind of the witness, and not simply facts in regard to the trade, if facts they be.

Mr. Mitchel: I beg to renew the offer, including in it an offer to prove that the plaintiff company through its agent did inquire as to the extent of Mr. Jones' authority before entering into the contract.

The Court: I think the result of these offers is to get this, perhaps, in a very peculiar shape. You start out with the offer to show what were the usual powers of a general manager, for the purpose of justifying the plaintiff, but the offer winds up in an inquiry into the actual authority.

Mr. Cochran: We further object, there is no offer to prove that the witness on the stand, or Mr. Dillenbeck who made this contract in behalf of the company plaintiff, had any such knowledge of the custom of the trade and rights of managers, if such rights existed.

The Court: I do not think this offer is a proposition to prove a custom of the trade.

Mr. Cochran: Yes, but not to bring home knowledge of it to the people who made the contract. I want the further objection to the term general manager as used by the plaintiff in this case. There is no such term either in the letter head, the contract between Hench, Dromgold & Co. and Philip Jones, nor was the word printed upon the sign on the door of the office which the witness visited in New York. The term is, manager, and not general manager.

The Court: I think the word manager is used in the offer.

Mr. Mitchel: I admit I made a mistake in using the word, general manager; the word should be manager.

The Court: Under this offer we will for the present admit evidence of what was contained on the letter heads used by the defendants in correspondence with the plaintiff previous to the execution of the contract in suit. We will also permit the plaintiff to show what was printed on the door of defendants' New York office at and previous to the date of execution of said contract; and also to show what inquiries, if

any, plaintiff made previous to the execution of the contract as to the extent of the authority of Mr. Jones. The question of whether or not the customs of the business can be put in evidence, to indicate his authority, will be passed upon after these other matters are brought before the court, if the offer of that kind is renewed. Exception for the defendants. [5]

Defendants presented these points:

1. The plaintiff having knowledge of the fact that Jones was merely the agent of the defendants was bound to inquire of the defendants and ascertain from them whether or not Jones had authority as their agent to bind defendants by this contract before entering into the contract. *Answer:* This point is refused as written. It is for the jury to find whether or not the plaintiff had knowledge at the time of the making of the contract that Philip Jones was merely a special agent of the defendants with limited powers, or a manager with general powers. If they find from the evidence that he was held out by defendants as the latter, then plaintiff was not bound to make inquiry of his principals as to his power to make this contract if its execution was within the usual power and authority of managers such as he apparently was. [7]

2. Mr. Jones having written in his letter to the plaintiff of May 3, 1899, paper No. 5, that he would have the contract signed, the plaintiff was warned thereby that Jones had no authority to bind the defendants by the contract in suit, but that said contract would have to be signed by the principals. *Answer:* This point is refused. The statement in this letter must be considered by the jury in connection with all the other evidence in the case, in determining whether plaintiff had such notice as to put him on inquiry as to the authority of Jones to sign this contract for the firm. [8]

3. If the jury find from the evidence in the case that Philip Jones had no power or authority to bind his principals, Hench, Dromgold & Co., by the contract upon which this suit is founded, that he entered into said contract without the knowledge of his said principals and that upon said principals learning that said contract had been entered into they immediately repudiated the contract and so notified the plaintiff, the verdict of the jury must be for the defendants. *Answer:* This point is refused. If defendants had held out Philip Jones as their

manager with apparent authority in the ordinary course of the business, to make a contract like the one in suit, and plaintiff, relying on that apparent authority, entered into the contract in suit, with him, then defendants would be bound thereby as his principals, though they had no knowledge of its execution at the time, and repudiated it immediately on being informed of the fact, if the plaintiff had performed, or was ready and willing to perform, its part under the contract. [9]

4. Mr. Jones' letter to the plaintiff under date of May 19, 1899, paper No. 7, having stated that the contract in suit was signed conditionally upon the plaintiff having the grinders patented in all the countries in which the parties of the second part were to sell the grinders, to wit : in England, Germany, France, Russia and Australia, and the foreign patents admitted in evidence in the case show that letters patent were not secured in Queensland until November 19, 1900, but six weeks prior to the date of the expiration of the contract in suit, in Great Britian until January 2, 1901, and in Austria until August 22, 1902, both of which last mentioned dates were after the expiration of the contract, and there being no evidence in the case that any patents whatsoever have been secured by plaintiff up to this time in Germany and Australia, except Queensland, the plaintiff failed to perform the condition upon which the contract was signed by Mr. Jones and therefore, the plaintiff cannot recover in this suit. *Answer:* This point is refused. [10]

Verdict and judgment for plaintiff for $5,000. Defendants appealed. .

*Errors assigned* were (2–5) rulings on evidence, quoting the bill of exceptions ; (7–10) above instructions, quoting them.

*Richard E. Cochran,* with him *Smyser Williams,* for appellant.—The plaintiff was bound to inquire of the defendants as to the authority of Philip Jones, their agent, to bind them by this contract : Lance v. Deacon, 39 Legal Int. 178 ; Wanamaker & Brown v. Carter, 22 Pa. Superior Ct. 625 ; Baring v. Peirce, 5 W. & S. 548.

The plaintiff was bound to prove the fact that Dr. Dwyer was its treasurer by the minutes of the board of directors.

The fact that the plaintiff did not protect its machines by patents in all the countries in which the defendants were to sell the machines until after the date of the expiration of the contract in suit prevents the contract from being binding on the defendants.

*James G. Glessner*, with him *Mullan, Cobb & Mitchel*, for appellees.

OPINION BY MR. JUSTICE BROWN, October 21, 1907:

The first contention of the appellants is, that the appellee was bound to inquire of them as to the authority of Philip Jones to bind them by the contract sued upon. He was admittedly their agent. When they purchased from him his office fixtures, export trade and good will, it was agreed between them that the name of the firm was to be " Hench, Dromgold & Co., New York City, N. Y., T. Edward Dromgold, Secretary and Treasurer ; Philip Jones, Salesman or General Manager." They took possession of the office that had been occupied by Jones, and the sign put on its door was " Hench, Dromgold & Co., Philip Jones, Manager." Their letter heads were as follows : " Hench, Dromgold & Co., Manufacturers of Agricultural Implements and Machinery for Export. Coffee Exchange Building. Philip Jones, Manager, New York." The agency of Jones not being questioned, he was a competent witness as to its scope, and he testified that he had express authority to make the contract. But if he did not have such authority, the jury could fairly have found from the evidence that the defendants, having placed him in charge of their general business at New York as manager or general agent, had held him out to the public as one clothed with authority to make the kind of contract that he made in their name with the appellee ; and the jury have found that he did possess either express or implied authority to bind the appellants, for they were instructed that unless they did so find, there could be no recovery. After telling them that if they should find there was no express authority, the learned trial judge further instructed them : " If you should conclude that there was no such express authority from the firm of Hench & Dromgold to their manager, or their agent, Jones, to make

this kind of a contract then you will look further and determine the second question, whether or not they had placed Mr. Jones in charge of their general business at New York as manager, or general agent, had so held him out to the world and the business community and public as if he were clothed with authority to make this kind of contracts in the ordinary course of the business as conducted by such managers at that time and place." Without inquiry into the scope of the authority of Jones to act for the appellants, the appellee, of course, took the risk that he was acting beyond it when he made the contract, but the jury having found, under proper instructions, that he had acted within his authority, failure of the appellee to make inquiry of the appellants as to its scope is no ground for reversing the judgment.

M. J. Dwyer, called by the plaintiff, testified, under objection, that he was its treasurer, and the second question raised on this appeal is, whether the appellee was not bound to prove by the minutes of its board of directors that he was the treasurer. Dwyer was not called to prove the execution of the contract by him as treasurer. As a matter of fact, he was no party to its execution. His name does not appear in it. It was executed in the name of the appellee by its superintendent, A. V. Dillenbeck. That Dwyer was the treasurer of the company was a fact very naturally and properly developed in his preliminary examination. He was not called as the treasurer of the company, but as a witness, to prove what he knew of the circumstances leading up to the execution of the contract. The question as to whether he was treasurer was immaterial on the main issue, and this was the correct view of the trial judge as expressed in his opinion overruling the motion for a new trial.

The third and last question raised by the appellants is: "Does the fact that the plaintiff did not protect its machines by patents in all the countries in which the defendants were to sell the machines until after the date of the expiration of the contract in suit prevent the contract from being binding on the defendants?" Nothing appears on the face of the contract about the appellee's protection of its patents in foreign countries. Before the contract was signed by Jones and delivered to the appellee, he wrote to it on May 3, 1899 : "We

are now satisfied with your contract and will have same signed. You must, however, protect your rights by patents in Germany, France, Russia and every country to which we intend sending your machinery." Five days later he wrote : " We have not as yet received word from you that your knife grinder has been patented in Europe and other countries. This is absolutely necessary in order to protect us and we would ask that this be done before signing the contract, otherwise the foreigners will beat us." On the following day the appellee wrote that its attorney was preparing specifications preparatory to applying for patents in England, France, Germany, Canada and certain districts in Australia. To this Jones replied that it was necessary that the appellee get out letters patent in Russia, Germany, France, England and Australia ; and, finally, on May 19, 1899, in sending the contract signed to the appellee, he wrote : " We now inclose contract signed, it being signed conditionally on your taking out patents in all the countries that we sell your grinders in."

By the fourth point submitted by the appellants they asked the court to instruct the jury that there could be no recovery because letters patent had not been secured by the appellee in some of the foreign countries. This was refused. The court's reasons for refusing it appear in the opinion overruling the new trial, and are as follows : " It was for the jury to find all the facts stated in the point, as well as others relating to the subject of the point which are not stated therein, and the court could not, therefore, assume the correctness of this single fact as a sufficient basis for a binding instruction. The mere fact of Jones stating in a letter to the plaintiff, that the contract had been signed on condition that certain patents should be taken out, does not necessarily prove such to have been the fact, especially in the face of the omission from the written contract itself of the entire subject of the procurement of patents. The court could not assume this statement to be true, or that plaintiff had assented to any such thing, as the basis of a binding instruction to the jury. Besides that, if such had been a condition of the contract, the court would have been obliged to submit to the jury the question whether or not the defendant had waived that condition by accepting a part of the goods contracted for, without objection on this

ground, and by soon after repudiating the entire contract on a totally different ground. These matters of fact, and the legal inferences to be drawn therefrom, were all necessarily submitted to the jury, and the court had no power to do otherwise under the facts and circumstances of the case." A sufficient reason why the point should have been refused is that the contract was not repudiated because the patents had not been protected in the countries in which the machines were to be sold. On July 22, 1899—barely two months from the time it was delivered by Jones to the appellee—and before the latter could reasonably have been expected to have the patents protected in all of the countries named, the appellants repudiated the contract on the sole ground of want of authority in Jones to make it. No complaint was made of the failure to protect the patents, and, when made on the trial, it could have been regarded as but an unavailing afterthought to avoid the agreement.

No one of the assignments can be sustained, and the judgment is affirmed.