# Manor National Bank, Appellant, *v.* Lowery.

*Judgments—Rule to open judgment—Husband and wife—Wife as surety for husband—Case for jury—Evidence.*

1. On a petition by a wife for a rule to open a judgment entered upon a single bill executed by her and her husband, alleging that she had signed the note as surety for her husband, the court opened the judgment as to her and awarded an issue to try the question raised by the petition. At the trial it appeared that the husband had arranged with the cashier of plaintiff bank for a loan of $1,500; that the wife had been taken to the bank by her hus-

band, had signed the note and had immediately left; that a certificate was then issued to the husband for $1,000, to a third person for $300 in payment of a mortgage on land of the wife, which payment the bank insisted on so that the judgment when entered might be a first lien upon her land; that after the payment of discount and expenses the balance was credited to the husband; and that the $1,000 was used by the husband to pay for certain stock standing in his name on the books of a corporation. The plaintiff's cashier testified that the loan was made to the wife and not to her husband, and that she requested that the money be appropriated as her husband should direct. The wife denied that she had had anything to do with negotiating the loan. *Held,* that the questions whether the wife was surety for her husband and whether the bank knew of it at the time of the loan were for the jury and that a judgment in favor of the wife should be sustained.

2. The court in such case made no error in admitting evidence to show the application by the husband of the principal parts of the proceeds of the note subsequent to the loan, without showing that the bank had knowledge of such intended use when the loan was made, as it thereby was shown that the loan was for the use of the husband. This evidence corroborated the more direct testimony that at the time the loan was made the bank knew how it was to be applied and that the husband was the principal and his wife the surety on the note.

*Witnesses—Officers of a corporation—Cross examination—Act of March 30, 1911, P. L. 35.*

3. The cashier of a bank is such an officer as may be called to testify as under cross-examination under the provisions of the Act of March 30, 1911, P. L. 35, providing that any director or other officer of a corporation may be so called to testify.

Argued Oct. 9, 1913. Appeal, No. 71, Oct. T., 1913, by plaintiff, from judgment of C. P. Westmoreland Co., Aug. T., 1907, No. 431, Fi. Fa. No. 65, Feb. T., 1908, on verdict for defendant, Urilla F. Lowery, in case of Manor National Bank v. Urilla F. Lowery and J. C. Lowery. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Rule to open judgment entered upon a single bill. Before McCONNELL, J.

The opinion of the Supreme Court states the facts.

The court opened the judgment as to defendant wife and an issue was awarded to try the question raised in the petition for the rule. The jury found a verdict for defendant, upon which judgment was entered. Plaintiff appealed.

*Errors assigned* were various rulings or the trial judge, various instructions to the jury and answers to points.

*John E. Kunkle,* with him *Christ. C. Walthour,* for appellant.

*James L. Kennedy,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1914:
The defendant and her husband executed a single bill or judgment note, dated July 9, 1907, in the sum of $1,500 payable in four months to the order of the plaintiff bank on which judgment was entered in the court below. In February, 1908, the defendant presented a petition to the court averring that she had signed the note as surety for her husband and that he had received the whole of the proceeds, and prayed that the judgment be opened and set aside as to her. The court opened the judgment and awarded an issue to determine the questions raised in the petition. The trial resulted in a verdict for the petitioner. Judgment was entered on the verdict and plaintiff has appealed.

The question submitted to the jury was whether the defendant was surety for her husband on the note on which judgment was entered and the payee bank knew it at the time the money was loaned and the note was executed. There was ample evidence in the case to sustain the affirmative of the proposition. In fact no other finding would have been justified under the evidence. It appeared that the appellee's husband had arranged with the cashier for the loan of the $1,500. On the day

the note was executed, the husband took his wife to the bank in a buggy. They entered the bank, she signed the note and they left. She was in the bank a very brief period, and the conversation was very limited. The proceeds of the note were then and there disposed of as follows: A certificate was issued to the husband for $1,000, another certificate to Sarah E. Allen for $300, the discount on the loan was $30, expenses $5, and the balance of $165 was credited to the husband's account in the bank. The appellee received no part of the funds. The $300 paid to Sarah E. Allen was to satisfy a mortgage held by her on the property of the appellee. Before the bank would make the loan it insisted on this mortgage being satisfied, thereby giving it a first lien on the premises when its judgment was entered. The payment of the $300 in satisfaction of the mortgage was to enable the husband to secure the loan and was therefore for his benefit. The evidence showed that the $1,000 paid to the husband was used by him to pay for certain stock in the Kiskiminetas Distilling Company held in his name. The cashier testified that the loan was made to the appellee and not to her husband, and that while she was at the bank and after she had executed the note she requested that the money be appropriated as her husband should direct. This was denied by the appellee who testified that she had nothing to do with securing the loan, that she was taken to the bank by her husband, was there but a very few minutes, and signed the note but got no part of the proceeds. She denied that she instructed the cashier to appropriate the money as her husband should direct, and that nothing of that kind occurred while she was in the bank. The verdict shows that the jury believed the appellee's story and discredited that of the cashier. It is manifest that the husband and the cashier were trying to evade the provisions of the act prohibiting a married woman from becoming surety for her husband. The evidence shows that she had no occasion for a loan at the time, and that her

husband needed the money and that it was applied to his use. If she borrowed the money and was the principal on the note she would be liable to the bank for its proceeds, although she at once turned them over to her husband. The jury has found, however, and upon ample evidence, that she did not receive any part of the proceeds of the note and did not sign the note as a principal but that her husband got the money, that the bank knew it was for his use, and that she was a surety and not a principal on the note. This finding relieves the appellee from any liability on the obligation signed by herself and husband and which the bank is now seeking to enforce against her.

There are eleven assignments of error. The first and second allege the court erred in admitting testimony to show the application by the husband of the principal part of the proceeds of the note subsequent to the loan without showing that the bank had knowledge of such intended use of the money when the loan was made. This testimony bore directly upon the questions at issue. In this way the defendant showed that this part of the loan went to the use of the husband and corroborated the more direct testimony that at the time the loan was made the bank knew how it was to be applied and that the husband was the principal and his wife the surety on the note. In this connection it should be observed that the court told the jury that "the terms and the nature of the obligation is determined at the time that the loan was made, and the things that operate on the then contracting parties are the things that control the question of the validity of the obligation, not things which transpire afterwards." The testimony, the subject of the fourth, sixth and seventh assignments, admitted under the same objection, was properly received. The plaintiff having offered the mortgage and evidence that it was paid for the purpose of showing that part of the loan in question went to the appellee, evidence was competent in rebuttal to show that this money was ap-

plied to the payment of the debt of the appellee's husband. However, the testimony became immaterial in view of the fact that the court correctly instructed the jury that it mattered not whether the mortgage was given for the appellee's debt or her husband's debt, that it was binding on her in either case. The fifth assignment is without merit. The conversation between the cashier and the husband in the absence of the appellee could not bind the latter as to the purpose of the loan or as to whom it was to be made.

The eighth and ninth assignments complain of certain excerpts from the charge in which the learned trial judge expressed his opinion as to the effect of some of the testimony, but when read with the context we do not think the opinion of the court withdrew the questions from the jury. Whether the bank knew at the time the loan was made where the money was to go and whether the appellee received any part of it, as suggested in the excerpts complained of, were questions which were submitted to the jury on all the evidence and in a charge adequate both as to the law and the facts. In concluding his charge, the learned judge used the following language to which no exception was taken: "Now taking all these facts and circumstances, the question comes back home to us, who got this loan from the bank? To the knowledge of the bank, who was making this loan? For what purpose was the loan made, and what knowledge of that purpose did the bank have at the time?—because these things must affect the bank, and we must look for facts and circumstances that did play on the minds of both contracting parties. If Urilla Lowery, for the purpose of giving a security for a loan that her husband had arranged for his own benefit, and to the knowledge of the bank that it was for his benefit,—if she so signed this note, she is surety only, and being a surety, the note as to her is a nullity. But if the loan was, in truth and in fact, made to her, as the cashier states, and she was the intended beneficiary of it, then

she would be a principal and can be held liable. According as you determine these issues of fact, you determine the case in favor of the plaintiff or in favor of the defendant."

The third assignment alleges error in overruling the plaintiff's objection to the defendant calling F. R. Rankin, cashier of the plaintiff bank, as if under cross-examination, and in requiring him to testify as if under cross-examination. The witness was called under the Act of March 30, 1911, P. L. 35, which provides that "any director or other officer" of a corporation may be called to testify as if under cross-examination. The purpose of the act is to make the representative of a corporation, transacting its affairs, subject to cross-examination like an individual litigant under similar circumstances. Prior to this legislation a corporation could call its individual opponent as if on cross-examination but the latter could not call the corporation's officer with whom he had dealt. The act was passed to prevent this inequality between the parties. The reason requiring a director of a bank to submit to cross-examination applies with equal force to the cashier. He is a representative of the bank within the duties intrusted to him as much as a director or any other officer, and we think he is an "officer" within the meaning of the statute. The tenth and eleventh assignments complain of the court's refusal to give binding instructions for the plaintiff. The case was clearly for the jury, and these assignments cannot be sustained.

Judgment affirmed.