# Amsterdam, Appellant, *v.* E. I. Dupont de Nemours Powder Company.

*Negligence — Dynamite manufactory — Explosion — Injuries to house—Res ipsa loquitur—Nuisance.*

In an action against the owner of a dynamite manufactory to recover damages for injuries to a house caused by concussion of the air, from an explosion at the defendant's plant, situated about two miles from the house with a broad river intervening, no recovery can be had if the plaintiff offers no evidence that the explosion was caused by the defendant's negligence. In such a case the maxim res ipsa loquitur has no application.

The manufacturing or keeping of dynamite in reasonable quantities in a plant established for the purpose of manufacturing 'dynamite does not constitute a nuisance per se. The question whether it is a nuisance depends on the locality, the quantity, the nature of the explosive, the manner of keeping it and the surrounding circumstances. These matters are for the consideration of the jury; and this is especially so in a case where a house two miles from a dynamite plant was injured by an explosion, although houses nearer to the plant were not injured and the house damaged was situated in a neighboring state across a wide river, while the plant occupied a small part of a large tract of land, and the house was built long after the establishment of the plant.

The difference between a nuisance per se and where a lawful business is carried on so as to become a nuisance, is not the remedy but only the proof of it. In the one case the wrong is established by proof of the mere act, and in the other, by proof of the act and its consequences.

314, (1916).    Syllabus—Charge of Court below.

*Evidence—Cross-examination — Superintendent of manufacturing plant.*

In an action against a corporation it is not error to refuse to permit a superintendent of one of the plants of the defendant company to be called as for cross-examination, where there is nothing in the case to show that the witness was a director or officer of the company.

Argued Nov. 17, 1915.    Appeal, No. 292, Oct. T., 1915, by plaintiff, from judgment of C. P. Delaware Co., March T., 1914, No. 226, on verdict for defendant in case of Benjamin Amsterdam v. E. I. Dupont de Nemours Powder Company.    Before RICE, P. J., PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Affirmed.

Trespass to recover damages for injuries to plaintiff's house caused by an explosion of dynamite.    Before BROOMALL, J.

The facts are stated in the opinion of the Superior Court.

At the trial Charles A. Patterson was called by the plaintiff as for cross-examination.    He stated that he was the superintendent of Gibbstown plant of the Dupont Powder Company.    The court sustained an objection on the ground that he was not a party or an officer or director of the company.

The court charged in part as follows:

[Gentlemen of the jury, this suit brought by Benjamin Amsterdam against the E. I. Dupont de Nemours Powder Company is prosecuted for the purpose of recovering compensation for injuries to property which the plaintiff contends he has sustained by reason of an alleged maintenance of a nuisance by the defendant on its lands.] (1)

[The burden of proof is upon the plaintiff to establish by the evidence to your satisfaction that he is entitled to the money which he aims to recover by your verdict.    Wherein you fail to be satisfied, just so far as

you fail to be satisfied just that far the plaintiff fails in his case, either partially or wholly, dependent upon the extent of his failure to satisfy you.]   (2)

[Now I have said that what the plaintiff aims to recover, his alleged injuries, resulting from the maintenance of a nuisance by the defendant,] (3) [it is important in the consideration of the case for you to be reminded, or to have in mind just what is meant in law when we talk about a nuisance; and to see whether the popular use of the term is the legal use of the term I have used, or what is meant when in law we use the term nuisance.  Now lexicographers give us the popular meaning of the term nuisance, and by the dictionary it is: "Anything by the use, or by its permitted existence works annoyance, harm, inconvenience, or damage to another."   That is the popular acceptation of the term.  But in law it is necessary to introduce another thought besides the mere thought of nuisance or harm, inconvenience or damage—to introduce another thought to get at the meaning of the term nuisance when it is used in law, and by the definition of a standard writer upon the subject of nuisance, H. G. Wood, you will see that the popular acceptation of the term has to be modified in order to understand what the legal acceptation of the term is, and he says: "In legal phraseology, it is applied to that class of wrongs that arise from the unreasonable, unwarrantable or unlawful use by a person of his own improper, indecent, or unlawful, personal conduct, working an obstruction or injury to a right of another or of the public and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage."

Now you will see, therefore, that nuisance as we are talking about it, as it is used in this case, and as being used by me is that the harm and injury which one does to another must be an unreasonable and unwarrantable injury.  Now in as much whenever in the administration of justice we come to a question of what is a reasonable

thing or what is an unreasonable thing, whenever we come to a question that is of a variant character, and in which has to be considered special circumstances, and special conditions of the case in hand, whenever, I repeat, we come to a question of reasonableness, it is always a question for the jury, because the law has no means of laying down a standard or fixed rule. And when the rule becomes a variant one according to the circumstances of the case, the only instrumentality in the administration of justice which can cope with that question are the jury who are to apply to the question the sober common sense view of a combination of twelve intelligent minds.]    (4)

[Therefore this suit is brought by the plaintiff because he contends that the defendant is maintaining upon its property a condition, an unreasonable condition which has worked injury to him, and the particular complaint which is contended for is that the defendant has maintained, is maintaining, has maintained upon its property explosive materials in an unreasonable quantity, and by that unreasonable use of their property this plaintiff—by the explosion of it during the term stated in the evidence running from May, 1911, to December, 1913, by the explosion of it, has injured his property.] (5)

[Now the plaintiff is not entitled to recover merely because he may have received injury, if he did receive injury, that isn't sufficient; but he is only entitled to recover if he was injured by an unreasonable, unwarrantable maintenance by the defendant of large quantities of explosive material apt to explode either purposely or accidentally. He must not only show, convince you, that he has been injured, but that he has been injured from that cause, that he has been injured by the nuisance, that he has been injured by the defendant maintaining upon their property large quantities of explosive material or such quantities of explosive materials as by its explo-

sions is calculated to produce the injury of which he complains as a consequence.] (6)

Neither is the defendant exempt from liability because it may have been prosecuting a lawful business in a lawful manner; it is liable if in connection with its lawful business lawfully conducted, it is maintaining an unreasonable, unwarrantable quantity of explosives upon its property apt to explode accidentally or otherwise to the injury of the plaintiff.

Every man has a right to the entire dominion over his own property. That is a maxim of the law with which we start; but it is a general maxim and there is a limitation to it. No man has a right to the entire dominion of his property, if in the use, in the dominion as to the use of it, he injures another. And that thought requires, so far as this case is concerned to be modified: that he has no right to use the property which belongs to him and over which he has dominion and control to the unreasonable injury of another, to the unwarrantable injury of another.

Two things must have co-existed in order to entitle the plaintiff to recover, to wit: the maintenance of an unreasonable nuisance by the defendant and a consequent injury to the plaintiff. These must be proven independently. That is to say, the existence of the nuisance must not be inferred merely from the injury to the plaintiff, if he was injured. Although the fact of injury is to be considered in ascertaining the nuisance; the injury, if any, is not to be inferred from the existence of the nuisance, if any, but must be proven.

It lies in the necessary path of the plaintiff's case then to satisfy you that this defendant has maintained upon its property, unreasonably, quantities of explosives apt or open to produce injury, and that in consequence of that his property has been injured. The first question: did the defendant maintain a nuisance? This question is to be solved by inquiring: did the defendant unreasonably maintain on its property large quantities of explo-

sive material? Now how susceptible was this material to be exploded accidentally or otherwise? How frequently did these explosions occur? Over what area did these explosions have an injurious effect? Was the plaintiff's property within that area? What was the nature, character, and location of the plaintiff's property? Was the plaintiff's property injured by these explosions? And take into consideration the location of the defendant's plant, the quantity of dynamite kept thereon. The explosive and dangerous qualities of dynamite. The character and needs of the defendant's business. The density of the population of the neighboring territory, and all the surrounding circumstances. And applying to these inquiries all of the evidence in the case, you will answer by your verdict: is the maintenance by the defendant of the explosive materials on their plant to the injury of the plaintiff unreasonable on the one hand; or is it reasonable that the plaintiff should yield his property rights, which are the subject of complaint in this case, as a member of the community in which the property is situated. That question, I repeat, is the question which you triers of fact are to determine from the evidence in the case. And in considering that question, as I have said, you will take into account the nature of the defendant's business, its character, its needs; and also the nature of the plaintiff's property, its character and needs. Should it or should it not yield to the requirements and needs of the defendant's business; or should the defendant, considering the character and needs of its business yield to the rights of property which are considered in this case, rights of property which are the subject of this case. Should they yield? Both of them are members of the same community. In a state of nature they each have absolute dominion over their property; but when they come together into a community they come into an artificial state of civilization, they must both yield some of their natural rights; and the question with you is whether or not this complaint

in this case falls on the side of the reasonable yielding which the plaintiff should give up, or does it not. If you should determine that it is reasonable—if you determine that it is reasonable for the defendant in the exercise of their dominion over their property, if it is reasonable to store quantities of explosive material, if you determine that is reasonable, then there is no nuisance and your verdict will be for the defendant. If on the other hand you should determine that the storing of dynamite by the defendant is an unreasonable use of their property, with relation to the plaintiff an unreasonable use of their property, then in law that is a nuisance, and if that nuisance has produced an injury to the plaintiff he is entitled to recover.]    (7)

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned,* among others, were (1-7) above instructions quoting them and (22) exclusion of Mr. Patterson as a witness called as for cross-examination.

*Albert Dutton MacDade,* for appellant.—The business in which the defendant is engaged, when carried on in a populated neighborhood is a nuisance: Weir's App., 74 Pa. 230; Kiser v. Kerbaugh, 40 Pa. Superior Ct. 163; Rhodes v. Dunbar, 57 Pa. 274; Czarniecki v. Bollman, 10 Cent. Rep. 96.

In the case at bar the plaintiff not only proved the acts as well, the acts and their consequences, but the court put the burden upon the plaintiff and the court was wrong for the burden was then upon the defendant to disprove the nuisance alleged, &c. The fact that the defendant made every reasonable effort to render safe its plant and its operation does not excuse it.

Again, in the case at bar the court below seemed to apply the principle of "damnum absque injuria," as ruled by Pa. Coal Co. v. Sanderson, 113 Pa. 126, 146, which was entirely wrong, for the other principle of "Sic

utere tuo ut alienum nov lædas," applied a rule approved and applied in Dennis v. Eckhardt, 3 Gr. 390; Howell v. McCoy, 3 Rawle 256; Hutchinson v. Schimmelfeder, 40 Pa. 396; Pa. Lead Co.'s App., 96 Pa. 116; McCune v. Pittsburgh, Etc., Co., 238 Pa. 83; Hennessey v. Carmony, 25 Atl. Rep. 374; Wier's App., 74 Pa. 230.

In Heeg v. Licht, 80 N. Y. 579, the mere keeping of gunpowder in dangerous proximity to the premises of another was held a nuisance, rendering the defendant liable for injuries caused by its explosion, irrespective of the question of negligence.

While the exact cause of some of these explosions was not shown, and while the exact cause is not determined in this case by an eye witness, yet there was sufficient in view of all the testimony, and the frequency of the explosions, for the jury to find the defendant guilty of negligence for the condition of affair was entirely under the control of the defendant and such as the explosions might have been attributed: Gavigan v. Refining Co., 186 Pa. 604; Dennis v. Eckhardt, 3 Grant 390; Green v. Sun Co., 32 Pa. Superior Ct. 521; Sigman v. Powder Co., 39 Pa. Superior Ct. 559; Derry Coal & Coke Co. v. Kerbaugh, 222 Pa. 448; Sowers v. McManus, 214 Pa. 244; Heeg v. Licht, 80 N. Y. 579; Kerbough v. Caldwell, 151 Fed. Rep. 194.

This case belongs to a class of cases in which the presumption of negligence arises out of the happening of the event causing the injury or damage. The maxim res ipsa loquitus applies: Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497.

The plaintiff's evidence disclosed a public nuisance per se: Hershey v. Kerbaugh, 242 Pa. 227; Weir's App., 74 Pa. 230; Evans v. Reading Chemical Fertilizing Co., 160 Pa. 209; Gavigan v. Atlantic Refining Co., 186 Pa. 604; Myers v. Malcolm, 6 Hill (N. Y.) 292; Riley v. Erie R. R. Co., 72 App. Div. (N. Y.) 476; Kleebauer v. Western Fuse, Etc., Co., 69 Pac. Reps. 246; Rudder v. Koopman, 116 Ala. 332; Laffin & Rand Pow-

der Co. v. Tearney, 131 Ill. 322, 7 L. R. A. 262, 23 N. E. Reporter 389; Forster v. Rogers Bros., 247 Pa. 54; Kleebauer v. Western Fuse & Explosive Co., 60 L. R. A. 377.

*William I. Schaffer,* with him *E. Wallace Chadwick,* for appellee.—The court properly refused to submit the question of negligence to the jury: Sowers v. McManus, 214 Pa. 244; "The Ingrid," 195 Fed. 596; Gavigan v. Refining Co., 186 Pa. 604.

The question of nuisance was submitted to the jury in a proper charge, if anything more favorable to the plaintiff than he deserved: Kiser v. Kerbaugh, 40 Pa. Superior Ct. 163; Gavigan v. Refining Co., 186 Pa. 604.

The court properly refused to permit plaintiff to call Charles A. Patterson, plant superintendent of the defendant company's Gibbstown plant, as under crossexamination: Manor Natl. Bank v. Lowery, 242 Pa. 559.

OPINION BY HENDERSON, J., March 1, 1916:

The defendant company is engaged in the manufacture of gunpowder, dynamite and other explosives and has for more than twenty years carried on a branch of its business in the State of New Jersey on a tract of land about a mile and three-quarters square having one of its fronts on the Delaware River, at which place it manufactures nitro-glycerin and various kinds of dynamite. The manufacturing plant covers about twenty-six acres of the tract. The plaintiff lives at Essington, Delaware County, on the opposite side of the Delaware river where he built a brick house in 1907. This house is distant about a mile and eight-tenths from the defendant's works. It is charged in the statement of claim that the defendant so conducted its business as to injuriously, carelessly and negligently discharge large quantities of high explosives thereby producing such violent concussion as damaged the walls, shattered the windows, displaced fixtures of the said building and disturbed the occupancy and enjoyment and use of the same by the plaintiff, and also that the defendant maintained a nuisance

in continuing the manufacture of high explosives at its factory, the effect of which was to injure and damage the plaintiff's premises. It was shown at the trial that an explosion occurred at the defendant's works in 1911 and another in 1913, the effect of which as alleged by the plaintiff was to crack and disturb the north wall of his building, to crack the plaster and fracture the glass in some of the windows. There was evidence of an explosion in 1912, but it is not asserted that any material injury therefrom resulted to the plaintiff. The effect of that in 1911 was to produce "a little crack" in the north wall, to crack the glass in several windows and to jar some pictures from the walls. The principal damage was attributed to the explosion in 1913. No evidence of negligence was introduced and the learned trial judge instructed the jury that the plaintiff could not recover for negligence. The case was submitted to the jury on the question whether the defendant maintained a nuisance and whether the injuries complained of were attributable to the explosions which occurred at the defendant's works. The verdict being for the defendant there was a finding that the defendant's manufactory did not constitute a nuisance or that the plaintiff's injury did not result from the cause alleged by him. There is an entire absence of evidence as to the cause and circumstances of the explosion of 1911. What quantity of material exploded, of what it consisted and what were the circumstances is nowhere made to appear. The evidence is contradictory as to the occurrence of an explosion in 1912 of the character described by one of the plaintiff's witnesses and the testimony does not show what may have exploded at that time nor the conditions surrounding such explosion. The explosion in 1913 to which the plaintiff refers his principal injury occurred in the gelatin mixing house, a building about twenty feet wide by thirty-five feet long. It contained at the time of the explosion a batch of material weighing 2,300 pounds in process of manufacture. In that building gun cotton, nitro-glyc-

erin and other materials were mixed together to make gelatin dynamite. The only witness called by the plaintiff who testified in regard to the material which caused the explosion was the superintendent of the works and his testimony negatived any inference of negligence. The plaintiff's case on this branch of his complaint rested, therefore, wholly on the application of the maxim res ipsa loquitur. Unless the court should have instructed the jury that the occurrence of the explosion permitted the inference of negligence the action could not be maintained for that cause. In view of several comparatively recent decisions of the courts of this State it is unnecessary to discuss the numerous authorities which the diligence of the learned counsel for the appellant has presented for our consideration. We regard it as now well settled in this State that negligence is not to be imputed to a defendant merely from the fact of an explosion of gunpowder or dynamite manufactured by him or in storage on his premises. The importance of these explosives not only as military supplies but in the construction of public works and the development of the resources of the country has been frequently recognized and the manufacture and possession of them held not to be per se unlawful. Because of their dangerous nature care in manufacture, custody and location must be commensurate with the risk necessarily involved but the question of the exercise of such care is one of fact. In Tuckachinsky v. Lehigh, Etc., Coal Co., 199 Pa. 515, such risk was likened to that arising from the operation of steam boilers and other machinery and apparatus necessary to the prosperity of great communities. The degree of care rises with the danger. It is care according to the circumstances. In the case cited the defendant stored four boxes and a part of a box of dynamite and four kegs and a part of a keg of black powder in its powder house located about seven hundred feet from where the plaintiff lived. There was no evidence of negligence in the care of the explosives or in the management of the magazine and the court

held that there was no question of negligence for the jury. In Sowers v. McManus, 214 Pa. 244, the contractor was engaged in widening a railroad bed and used dynamite for blasting purposes in the prosecution of his work. A quantity of this on hand for future use exploded as a consequence of which the plaintiff was injured. In an opinion by the present Chief Justice it was held that the possession of an explosive of the dangerous character of dynamite is not unlawful nor in itself negligent but that care commensurate with the danger of having possession of it must be exercised at all times by those having it in their care and that "as the mere possession of dynamite to be used for a lawful purpose is neither unlawful nor negligent where one is injured by the explosion of it when stored, the burden rests upon him, as in other cases of negligence, of proving either the specific act of negligence that caused the explosion, or such circumstances surrounding it as would justify the inference that the degree of care required by the law had not been observed. When, as here, nothing appears but the explosion itself, there can be nothing but conjecture as to what caused it, and against conjectured negligence no man is called upon to defend, whether the care to be exercised by him be of ordinary or of high degree." It was held in the same case that the maxim res ipsa loquitur does not apply in such a case. To the same effect is Forster v. Rogers Bros., 247 Pa. 54. This was a case arising out of an explosion of dynamite in which case Mr. Justice MOSCH- ZISKER discusses some of the authorities in other states and the Pennsylvania cases and affirms the proposition that "Where the plaintiff's case does not rest upon the charge of maintaining a nuisance but some special act of negligence is pleaded and relied on it must be proved." Derry Coal Co. v. Kerbaugh, 222 Pa. 448, was determined in accordance with this principle. The action of the trial judge with respect to the question of negligence was in harmony with the foregoing and other cases.

The evidence bearing on the subject of nuisance com-

prised a description of the defendant's plant, the quantity of explosives kept there, the location of the plaintiff's building with reference to the plant of the defendant and the fact of the explosions with the damage to buildings alleged to have resulted therefrom. The case was submitted to the jury with the instruction that the burden of proof was on the plaintiff to show not only that he was injured but that he was injured by a nuisance maintained by the act of the defendant in keeping on its property large quantities of explosive material or such quantity as by explosion was calculated to produce the injury of which the plaintiff complains. The charge defined the legal meaning of "nuisance" and repeated the instruction by directing the attention of the jury to the inquiry whether the defendant unreasonably maintained on its property large quantities of explosive material; how susceptible this material was to be exploded accidentally or otherwise; how frequently explosions occurred; over what area such explosions had an injurious effect; did this area include the plaintiff's property and was this property injured by such explosions. The attention of the jury was called to the quantity of dynamite manufactured or stored, the character of the defendant's business, the density of the population of the neighboring territory and the surrounding circumstances and the direction was given to find for the plaintiff if the jury should conclude that the manufacture and storing of dynamite in the quantity shown to be there in view of the surrounding conditions was unreasonable and unwarranted. That the manufacturing or keeping of such explosives as were produced by the defendant does not constitute a nuisance per se is a conclusion supported by the weight of authorities. It depends on the locality, the quantity, the nature of the explosive, the manner of keeping and the surrounding circumstances whether such manufacture or storage is a nuisance. It is contended by the appellant that this is a question of law and that binding instructions in favor of the plaintiff should have

been given on this point. We are not convinced, how-. ever, that this is the correct view. On the contrary, the question is ordinarily one for the jury; particularly so where as in this case the property said to have been injured was nearly two miles from the place of the explosion and numerous buildings nearer the plaintiff's works were not so injured. The defendant's works occupied a small part of a large tract owned by it in an adjoining state; a wide river intervened; explosives of varying strength were manufactured; the business was legitimate; the plant was in operation many years before the plaintiff built his house and only one explosion causing material injury to him is claimed to have taken place in the intervening years. Under such circumstances the question was properly one for the jury. No doubt the court might determine whether a nuisance existed on an established state of facts, but here inferences are to be drawn and conclusions reached from evidence to some extent contradictory and in such a case the jury is the trier of the facts. The difference between a nuisance per se and where a lawful business is carried on so as to become a nuisance is not in the remedy but only in proof of it. In the one case the wrong is established by proof of the mere act and in the other by proof of the act and its consequences: Dennis v. Eckardt, 3 Grant 390. The court could not declare that the defendant's business conducted about two miles from the plaintiff's property was such a menace to its safety as to bring the business within the category of nuisances. Under the evidence taking the view most favorable to the plaintiff that was a question of fact. This view is supported by the decisions in Forster v. Rogers Bros., supra, and Kiser v. Kerbaugh, 40 Pa. Superior Ct. 163. Each was the case of the explosion of dynamite in a thickly settled community. In the first of these Mr. Justice MOSCHZISKER said in reversing the judgment, that if the testimony at the next trial should be equally strong in relation to the facts as to

the quantity and quality of the dynamite and that the manner in which it was kept created a danger beyond that which ex necessitate always attaches to the lawful possession of such a material and that this danger amounted to a menace to life and property in the neighborhood then they properly could determine that the defendants had maintained a public nuisance which resulted in the destruction of the plaintiff's building and bring in their verdict accordingly. And in the latter case it was said "The burden rested upon the plaintiff to satisfy the jury on the question of nuisance as complained of." The question of nuisance or no nuisance was therefore properly submitted as one of fact.

Exception was taken to the refusal of the court to permit the plaintiff's counsel to call Charles A. Patterson for examination as if on cross-examination. The witness testifies that he was superintendent of the Gibbstown plant of the Dupont Powder Company and it was contended for the plaintiff that he was thus brought under the operation of the Act of March 30, 1911, P. L. 35, which is an amendment of the Act of May 23, 1887. There is no testimony in the case to show that the witness was a director or officer of the Dupont Powder Company. From anything that appears in the case he was simply an employee having charge of the manufacturing of explosives at this particular place. There were assistant superintendents, experts, engineers and we know not how many other functionaries but it does not appear that any of these performed any corporate duties or was in any way concerned in the administration of the corporate business. The case of Manor National Bank v. Lowry, 242 Pa. 559, cited by the appellant has reference to a cashier who is declared by the National Banking Act to be an officer of the corporation and is classed with the president and vice-president. He is directly concerned with the administration of corporate affairs. The law imposes duties on him and his functions have direct relation to the management of

the business of the bank as a corporation. Not so with
the defendant's superintendent. From all that appears
in the case he was merely charged with overseeing the
making of powder in one of the manufactories carried on
by the corporation.

It is unnecessary to discuss the numerous assignments
of error separately. Many of them relate to the charge
of the court but we do not regard them as well founded.
The charge was as favorable to the plaintiff as the evi-
dence warranted and the failure of the plaintiff to re-
cover a verdict was not because the question was not
clearly presented to the jury.

The judgment is affirmed.