## Markley v. Snow, Appellant.

*Malicious prosecution—Principal and agent—Authority of agent.*

A principal may be held liable for the act of his agent in instituting a malicious prosecution. But the act of the agent becomes that of the principal only when expressly authorized, or when his authority to act may fairly be inferred from the nature and scope of the employment. Generally the duty of superintendence does not carry with it the duty to arrest or prosecute. The inference of authority to do either does not arise from the mere fact of the agency. The authority may be implied when the arrest is made by the agent in the absence of the principal for the protection of property that is in danger, and in some cases it has been inferred when the arrest was to recover the property back, or where the crime was at the time being perpetrated. But where the act is done for the punishment of the supposed criminal, or for the vindication of the law, it is not the act of the principal and does not subject him to liability.

A partnership engaged in the business of mining coal cannot be held liable in an action of malicious prosecution, where it appears that the arrest of the plaintiff had been made at the instance of the superintendent of the partnership for the burning of a barn belonging to the partnership,

but that it had not been made until three months after the alleged crime had been committed.

*Malicious prosecution—Probable cause—Evidence.*

Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a prudent man in believing the accused guilty. It is not determined by the existence of facts alone, but by the prosecutor's belief in them, and the reasonableness of his belief. If he knows that statements tending to implicate the accused are untrue, or if they are impeached by other facts within his knowledge, or are discredited because of the source from which they come, they furnish no ground of defense, because as to the prosecutor they were not a ground of belief.

Where in an action for malicious prosecution the defendant presents a point in which he asks the court to charge that if the prosecutor had knowledge of the facts set forth in the point, he had probable cause for instituting the prosecution, it is proper for the court to affirm the point with the following qualification: " Unless the jury find that there were other facts satisfactorily proven which ought to have convinced the prosecutor as a reasonably prudent man that he could not honestly rely upon the facts enumerated in the point."

Argued Oct. 22, 1903. Appeal, No. 112, Oct. T., 1903, by defendant, from judgment of C. P. Washington Co., May T., 1903, No. 52, on verdict for plaintiff in case of Samuel B. Markley v. Philip Snow, J. W. Miller, H. J. Millar, and James W. Ellsworth, trading as James W. Ellsworth & Company. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ. Reversed.

Trespass for malicious prosecution. Before MCILVAINE, P. J.

The court charged in part as follows :

[Now, there is one of the defendants in this case, James W. Ellsworth & Company, that is a partnership or a corporation, it does not appear very plainly here which, and I do not think it makes any difference which. Of course on account of its impersonal character it could not be guilty of instituting a malicious prosecution ; but, gentlemen, where the business of a corporation or the business of a partnership, or even of an individual, is committed to the care of officers and they have control of the business and it is their duty under their employment to look after the property and to care for it, they have a right

in the discharge of their duty to their employers or their company, to make a criminal information as representatives of the company, or to have it made if any criminal offense has been committed against that property. So here, if Mr. Miller and Mr. Millar were officers of the company known as James W. Ellsworth & Company and had committed to their care and management, one being the superintendent and the other the paymaster, the property of that company, especially the stable and its contents which were burned, they would have a right, in behalf of the company, when the property was burned, to engage actively in ferreting out who had perpetrated it and would have a right as the representatives of the company to make an information. Now, having that right, if they abused it, and acting as the representatives of the company, make an unfounded prosecution, then the law is that the company or corporation that they represented would be liable, not because the company or corporation has personally instituted or been guilty of instituting a malicious prosecution, because I say it could not, being impersonal, but I say because those who represented it and who were employed to represent it had instituted a prosecution without probable cause and maliciously, and the consequence would be that a verdict and judgment could be entered against the company and the damages could be collected against the company, if the facts appear as I have indicated.] [1]

Defendants presented these points:

7. If the jury believe from the evidence that the defendant Miller had reasonable ground for believing the fire was of incendiary origin; that the plaintiff had been discharged by him; that subsequent to his discharge he had made threats against the defendants, or any of them, and had said he would do the worst dirt to them he could; that he requested Fred Konitz to inform him in case he found out anything the defendants had against him in order that he might skip out of the state, all of which was communicated to Miller shortly after the fire; that he was reported to the defendant Miller as having been seen at Ellsworth the day before the barn was burned; that Bert Mathers told the defendant Miller that the plaintiff had offered him (Mathers) $100 to burn the barn and upon his refusal to do so had said he knew a man whom he could get to

do it; that subsequent to the arrest of the plaintiff and prior
to the hearing while he and Mathers were in the lockup at
Charleroi, plaintiff advised Mathers to say at the hearing that
if he had said anything which tended to incriminate himself or
the plaintiff while at Ellsworth, he was drunk, stating that the
evidence of a drunken man would not be regarded; then the
defendant, Miller, had such reasonable grounds to believe the
plaintiff guilty as would justify him in his actions and no ver-
dict should be rendered against him. *Answer:* Affirmed. Un-
less the jury find that there has been other facts satisfactorily
proven in this case which ought to have convinced Miller as a
reasonably prudent man that he could not honestly rely on the
facts enumerated in this point. [2]

9. Under all the testimony, the plaintiff is not entitled to
recover and the verdict must be for the defendants. *An-
swer:* Refused. [3]

Verdict and judgment for plaintiff for $3,000. Defendant
appealed.

*Errors assigned* (1–3) above instructions, quoting them.

*A. M. Todd* and *R. W. Irwin,* with them *James A. Wiley,* for
appellant, cited: Brennan v. Merchant & Co., 205 Pa. 258;
Rounds v. Delaware, etc., R. R. Co., 64 N. Y. 129; Guinney
v. Hand, 153 Pa. 404; Brunner v. Telegraph Co., 151 Pa. 447;
Johnson v. Armour, 18 Fed. Repr. 490; Dwinelle v. N. Y. Cent.,
etc., R. R. Co., 120 N. Y. 117 (24 N. E. Repr. 319); McKenzie
v. McLeod, 10 Bing. 385 Sheridan v. Charlick, 4 Daly, 338;
Williams v. Jones, 3 Hurlst. & Colt, 256; Phila., Germantown,
etc., R. R. Co. v. Wilt, 4 Whart. 143; Snodgrass v. Bradley,
2 Grant, 43; Flower v. Penna. R. R. Co., 69 Pa. 210; Govaski
v. Downey, 100 Mich. 429; Biehofer v. Loeffert, 159 Pa. 365;
McCarthy v. DeArmit, 99 Pa. 63; Deitz v. Langfitt, 63 Pa.
234; Bernar v. Dunlap, 94 Pa. 329; Fisher v. Forrester, 33
Pa. 501.

*W. S. Parker,* with him *Winfield McIlvaine,* for appellee,
cited: Brennan v. Merchant & Co., 205 Pa. 258; Brunner v-
Telegraph Co., 151 Pa. 447; Franklin Fire Ins. Co. v. Brad-
ford, 201 Pa. 32; Stier v. Labar, 16 W. N. C. 273; Replogle

v. Frothingham, 16 Pa. Superior Ct. 374; Schofield v. Ferrers, 47 Pa. 194; Weinberger v. Shelly, 6 W. & S. 336; Bell v. Atl. City R. R. Co., 202 Pa. 178.

OPINION BY MR. JUSTICE FELL, January 4, 1904:

The plaintiff was arrested for setting fire to the barn of J. W. Ellsworth & Company, a partnership engaged in selling and mining coal. After his discharge on the entering of a nolle prosequi by the commonwealth, he brought this action for malicious prosecution and obtained a verdict against the police officer who made the information on which the warrant was issued, the superintendent of the business and the paymaster at whose instance the arrest was made, and against the partnership. It did not appear from the testimony that any member of the partnership had assented to or authorized the prosecution, or had any knowledge of it. The arrest was not made until three months after the barn had been burned, and whatever the superintendent and paymaster did in relation thereto was wholly at their own instance. If the partnership is liable in this action, it is because of an act of its agents, done in the course of their employment. The instruction on this branch of the case is the subject of the first assignment of error. It was in substance that if the care and management of the property, especially of the barn and its contents which were burned, were committed to the superintendent and paymaster, it was their right on behalf of the company, when the barn was burned, to engage actively in ferreting out the perpetrator of the crime and to make an information; and if in so acting as representatives of the company they instituted an unfounded prosecution, their principal would be liable. The superintendent and paymaster, while called officers of the company, were in fact employees or agents of the partnership, charged doubtless with the management and care of its property at the mine, and the question raised by the assignment is whether the arrest of the plaintiff, three months after the barn had been burned, by their procurement, was an act within their implied power, done in the course of their employment.

Undoubtedly a principal may be held liable for the act of his agent in instituting a malicious prosecution. But the act of the agent becomes that of the principal only when expressly

authorized, or when his authority to act may fairly be inferred
from the nature and scope of the employment. Generally the
duty of superintendence does not carry with it the duty to
arrest or prosecute. The inference of authority to do either
does not arise from the mere fact of the agency. The authority
may be implied when the arrest is made by the agent in the
absence of the principal for the protection of property that is
in danger, and in some cases it has been inferred when the
arrest was to recover the property back, or where the crime
was at the time being perpetrated. But where the act is
done for the punishment of the supposed criminal, or for the
vindication of the law, it is not the act of the principal and
does not subject him to liability. This principle has been uni-
formly recognized in the decisions on the subject, and what-
ever lack of harmony there is in the cases has resulted from the
difficulty of applying it to the particular facts. Railroad
companies have been held liable for the unlawful arrest of pas-
sengers by conductors for nonpayment of fare : Krulevitz v.
Eastern Railroad Co., 140 Mass. 573 ; * Kelly v. Traction Co.,
132 N. Car. 368 ; and for arrest for breach of the peace : Ruth
v. St. Louis Transit Co. (Mo. App.), 71 S. W. Repr. 1055 ; and
the employer for the arrest by a superintendent for shop-
lifting detected, it was supposed, in the act : Staples v. Schmid,
18 R. I. 224,† and by a floor walker : Mallach v. Ridley, 43
Hun, 336 ; for the arrest by a manager of a labor agent for
passing through a mill and persuading men to quit work :
Smith v. Munch, 65 Minn. 256 ; ‡ for the arrest by a ticket agent
of a traveler on the charge of passing counterfeit money : Pal-
meri v. Manhattan Railway Co., 133 N. Y. 261 ; § Eichengreen
v. Railroad Co., 96 Tenn. 229 ; ‖ for an arrest by a ticket seller
on the charge of causing disorder in a theatre : Dickson v.
Waldron, 135 Ind. 507 ; ¶ and in similar cases where arrests
were made by watchmen, roadmasters, and others charged with
like duties.

---

* Also reported 5 N. E. Repr. 500.

† Also reported 26 Atl. Repr. 193.

‡ Also reported 68 N. W. Repr. 19.

§ Also reported 30 N. E. Repr. 100.

‖ Also reported 34 S. W. Repr. 219.

¶ Also reported 34 N. E. Repr. 506.—Reporter.

On the other hand, the trend of decision is against holding the principal liable when the arrest has been made after the supposed crime had been committed, and not for the protection of his property or interests. In such cases the agent has been presumed to have acted on his own account, for the vindication of justice. There has been no direct ruling on the subject by this court, but the recent case of Croasdale v. Von Boyneburgk, 206 Pa. 15, in which it was held that the managing owner of a vessel has no implied authority to institute criminal prosecution for embezzlements, is within the principle stated. There are numerous decisions on the question in other jurisdictions. In Pressley v. Mobile, etc., Railroad Co., 15 Fed. Repr. 199, the company's land agent, who was vested with extensive powers of sale, lease and collection of income, caused the arrest of the plaintiff on the charge of spoliation of timber lands. It was held that in so doing he was not acting within the scope of his agency, and the company was not liable. In Mulligan v. N. Y. & Rockaway Beach Ry. Co., 129 N. Y. 506, * a ticket agent had been notified by the police to watch out for certain counterfeiters, and caused the arrest of a person whom he thought had . tendered him a counterfeit note. In referring to this case it was said in Palmeri v. Railroad Co., 133 N. Y. 261: † " We held that the company was not responsible in damages, because the agent was not, in what he did, acting within the scope and line of his duty. His acts were not such as could be deemed to be performed in the course of employment, or such as were demanded for the protection of his employer's interests, but rather those of a citizen desirous of aiding the police in the detection and arrest of persons engaged in the commission of crime." In Edwards v. London & North Western Railway Co., L. R. 5 C. P. 445, it was decided that a railroad company was not liable for the action of a porter who had temporary charge of its yard in arresting a teamster whom he suspected of stealing lumber. Similar rulings were made in Larson v. Fidelity Mut. Life Assn., 71 Minn. 101 ; Tolchester Beach Improvement Co. v. Steinmeier, 72 Md. 313 ; Travis v. Standard Life & Ins. Co., 86 Mich. 288 ; Mali v. Lord, 39 N. Y. 381 ; and

---

* Also reported 29 N. E. Repr. 952.

† Also reported 30 N. E. Repr. 1001.—Reporter.

Carter v. Howe Machine Co., 51 Md. 290. In Allen v. London
& South Western Ry. Co., L. R. 6 Q. B. 65, it was said by
BLACKBURN, J.: " There is a marked distinction between acts
done for the purpose of protecting property by preventing a
felony, or of recovering it back, and an act done for the pur-
pose of punishing the offender for that which has already been
done. There is no implied authority in a person having the
custody of property to take such steps as he thinks fit to punish
a person whom he supposes has done something with reference
to the property which he has not done. The act of punishing
the offender is not anything done with reference to the property,
it is done merely for the purpose of vindicating justice."

The liability of the principal for the act of his agent in in-
stituting an unfounded prosecution is governed by the general
principles of agency, and where there is no express authority
and there has been no subsequent ratification of the act, the
ultimate test is whether the agent acted within the scope of
his implied authority. In determining this, each case must
stand on its own facts, and in some the question will be one
of serious difficulty and doubt. But in this case it may safely
be said that there was no presumption of authority from the
mere fact of the agency, to make an arrest three months after
the supposed crime had been committed, and when there had
been the fullest opportunity in the meantime for the agents to
confer with their principal.

The second assignment of error is to the answer to the de-
fendants' second point. The court was asked to instruct the
jury that if at the time the prosecution was instituted, Miller,
one of the defendants and the superintendent, had knowledge
of the facts set forth in the point, he had probable cause for
instituting the prosecution. The answer given was " Affirmed,
unless the jury find that there were other facts satisfactorily
proven in this case which ought to have convinced Miller as a
reasonably prudent man that he could not honestly rely upon
the facts enumerated in the point." If, as is argued, the effect
of this answer was to submit the whole question of probable
cause to the jury, it was error, as it always is for the court to
say whether a given state of facts constitutes probable cause.
But this was not its effect. The jury were not permitted to
find whether other facts in connection with those enumerated

made out a defense of probable cause, but whether there were other facts that should have convinced Miller that he could not rely on the facts stated.    Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a prudent man in believing the accused guilty.    It is not determined by the existence of facts alone, but by the prosecutor's belief in them, and the reasonableness of his belief.    If he knows that statements tending to implicate the accused are untrue, or if they are impeached by other facts within his knowledge, or are discredited because of the source from which they come, they furnish no ground of defense, because as to the prosecutor they were not a ground of belief. " The prosecutor must himself believe and the belief must be on reasonable grounds : " Note to Munns v. Dupont, 1 American Leading Cases, 265.    There were other facts, and the plaintiff's contention at the trial was that they so modified the facts relied on to establish probable cause that no reasonable belief could be based on them.

The third assignment to the refusal of the court to direct a verdict for the defendants cannot be sustained, since the good faith of the prosecution, notwithstanding the facts relied on as indicating guilt, was called in question by the testimony.

We reverse the judgment on the first assignment of error and judgment is now entered in favor of J. W. Ellsworth & Company.    As to the other defendants, against whom a verdict was rendered, we grant a venire facias de novo.