Shields *v.* Patterson et al., Appellant.

Argued October 14, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*James E. Marshall* of *Marshall & Watson*, for appellants.—In a prosecution for larceny by bailee, a demand for the goods need not be made before there is probable cause: Commonwealth v. Chathams, 50 Pa. 181; Commonwealth v. Boyer, 3 C. C. 234.

The agent was not acting within the scope of his authority: Dobbs v. Zink, 290 Pa. 243; Bunting v. Goldstein, 283 Pa. 356; Dougherty v. Binenstock, 293 Pa. 566; Dunmore v. Padden, 262 Pa. 436; Cherry v. Union National Bank, 87 Pa. Superior Ct. 114.

*W. H. Martin,* for appellee.—Demand for the property was necessary: Cooley on Torts, Vol. 2, p. 870; Taylor v. Hanlon, 103 Pa. 504; Clowes v. Hughes, 3 Pa. Superior Ct. 561.

The agent was acting within the scope of his authority: Staples v. Schmidt, 26 Atlantic 193; Coyle v. Snellenberg, 30 Pa. Superior Ct. 246.

OPINION BY LINN, J., December 12, 1929:

Two of the three appellant defendants, Patterson Brothers, are partners conducting a dry-goods store in Butler; the third, R. O. Patterson, son of one of the others, is employed by them as credit manager. They appeal from judgment on a verdict in a suit brought by a married woman for malicious prosecution on the charge of larceny by bailee.

In 1919 and 1920, she obtained from Patterson Brothers a lot of household goods (rugs, blankets, pillows, mattress, etc.) priced at $379.46; she paid down $118, and agreed to pay the balance "$10.00 on the pay day of each and every two weeks thereafter at their stores ......" pursuant to the terms of a

so-called bailment lease stating their contract. By February, 1923, she had paid only $181.50 and was in default. R. O. Patterson, in the performance of the duties of his employment, then called to see her and demanded payment of amounts due, and she informed him that as her husband was out of work and in a hospital under treatment for injury sustained in the coal mines, she (in the words of her testimony) "could not make the payments. He [R. O. Patterson] said, 'If you can't make the payments I will have to come and get the furniture.' I said, 'You can have it because I can't pay.' " She adds that he refused to take it. From that time until during 1928, no collector called on her; R. O. Patterson testified that he did not know where she lived; that, in violation of the contract she had moved without notice; she testified that when she moved she telephoned that fact to defendants and during all that period she lived in Butler or North Butler.

The prosecution was begun by information made by R. O. Patterson on June 7, 1928, and on that day a warrant issued for her arrest. Pursuant to that warrant, and apparently in consequence of notice to her by the constable that she was required to appear before an alderman, she appeared in September, 1928. There were two meetings in the alderman's office at which her default was the subject of discussion, before the meeting at which she was committed. The alderman testified "She appeared with counsel and I think it was just continued pending settlement." At the last appearance in October, a hearing was waived and she was held in $500 bail and, in default of bail, was committed to jail. After being in jail about an hour her father-in-law became surety and she was released.

In disposing of the assignments to the refusal to direct a verdict for defendants we take the oral evidence and inferences therefrom favorable to plaintiff

and reject what is unfavorable to her. The jury may have found from the evidence that in the alderman's office, R. O. Patterson said to her husband (as he testified) that unless he furnished the "balance on my wife's bill that they claimed she owed them ......" "they would put her in jail;" that he offered to pay $12 a month but his offer was declined. He states that the hearing was adjourned "to see if I could get the money;" he could not, and the commitment followed. The plaintiff also testified that R. O. Patterson stated in the alderman's office that if the account was not paid she would be put in jail.

In the criminal trial R. O. Patterson testified that he had never made a demand on her for the return of the goods—that what he had demanded was payment of the amount due. In view of that testimony, the court (the same learned judge who presided in the trial now under review), being of opinion that a wilful failure to return the goods was not shown by mere demand of payment without a demand for the return of goods themselves, directed the jury to find a verdict of not guilty.

Appellants contend that the court erred in declining to charge as requested that there was wilful failure to return the goods (see Act of May 5, 1927, P. L. 776, amending Sec. 108 of the Act of March 31, 1860, P. L. 382), if she did not return them "at the end of the lease period as agreed upon in the lease ......" The request was affirmed with the qualification "if by the word wilful we are to understand that she failed to return the goods after demand made upon her for their return." The record required that qualification. The evidence is that in 1920 she paid only $62 and in 1922 only $15; in 1921 she paid nothing; in 1923 during the month of January she paid only $10. Her evidence that Patterson refused to take the goods back and in February, 1923, demanded rent has been referred to;

the term prescribed in the lease was then long past; he testified "at the time he [plaintiff's husband] was out of work we continued their payment ......;" "frequently when people are sick or out of work we continue over a period of time that they do not make payment." The right of strict performance was waived by defendants. In view of Patterson's own evidence, there could be no conversion without a demand for the goods for until then how was plaintiff to know that defendants had withdrawn their acquiescence in her retention of the goods notwithstanding her non-payment of rent on the due-dates?

Another complaint is that the court qualified a request to charge that if plaintiff "disposed of any of this property without the knowledge or consent of the defendants then there is a fraudulent conversion and there can be no recovery," by affirming "if by the word disposed" it is meant that plaintiff undertook to sell the property or convert it into money or to conceal it, but if it simply refers to disposing of it by reason of its being worn out, we think the point should not be affirmed ......" There is evidence that some of the articles, 3 rugs, 1 spring, a pair of blankets, an aluminum set, were worn out and thrown away and for the same reason a mattress was burned. The contract expressly exempted plaintiff from liability for loss or damage to the goods by "ordinary wear." She testified that these articles were worn out in that way, and was therefore not liable for them because the contract expressly exempted her; there is no evidence of any other disposition to which the requested instruction applied.

The two partners contend that they had no part in the prosecution, and that judgment should be reversed as to them. We have examined the record in the light of the argument of the learned counsel for appellants, but cannot accept that view. It is based on the theory

that R. O. Patterson, the credit manager, acted without authority express or implied in conducting the prosecution. "The general rule is that the act of the agent becomes that of the principal only when expressly authorized or when his authority to act may fairly be inferred from the nature and scope of the employment." Markley v. Snow, 207 Pa. 447; see also Dunne v. R. R. Co., 249 Pa. 76, 81; Blaker v. Elec. Co., 60 Pa. Superior Ct. 56, 59. The jury had the following evidence given by R. O. Patterson on which to find that both partners were bound by what their agent did. He was and had been credit manager for many years; his duty was "just collecting and taking care of credits;" he came to plaintiff's house from time to time to collect rentals due; he "continued" the payments from time to time; he "had entire charge and control of the credit department;" he made the information in that capacity; he "spent at least two months trying to hunt these people;" before making the information he consulted with and was advised by the counsel for his co-defendants concerning the advisability of making the arrest and prosecution; he joined in two continuances of the proceeding before the alderman; the firm's attorney acted as prosecuting counsel in the criminal trial; one of the partners was not informed of the arrest "until the lady was in jail;" the other "did not know of it for several weeks after that;" "a few days before" the criminal trial he discussed the pending prosecution with both partners, who, he says "did not say anything in particular about it except they were surprised that such a condition had occurred ......;" but that they did not advise him to "stop the prosecution." In the efforts to find the plaintiff, the firm, presumably at his instance, instituted a search or "locate" for her through a credit exchange; for the same purpose they also employed two agencies, one whose main office is in St. Louis, and of which R. O. Patterson testified "we

are a member," and another whose main office is in Brooklyn.

While the mere fact of agency is not enough to render his employers liable, there is sufficient evidence to enable the jury to find that what he did to obtain payment of the balance due his employers, or to recover their property, was clearly done in the course of his employment—that is, within the express or implied authority conferred on him by them: Greb v. R. R. Co., 41 Pa. Superior Ct. 61, 65, etc.; Riddell v. Transit Company, 80 Pa. Superior Ct. 176; McDermott v. Ice Company, 44 Pa. Superior Ct. 445; McClung v. Dearborne, 134 Pa. 396; Reed v. Loosemore, 197 Pa. 261; Dunne v. R. R. Company, supra; McGrath v. Sugar Company, 282 Pa. 265. If there could be any doubt about the sufficiency of the evidence of the scope of his general authority as indicated by what he did prior to the arrest, (though we think there is none) it is removed by his evidence quoted describing that his employers were informed and did not disapprove; their attitude toward the matter, on being advised, reflects a flood of light on the scope of his authority as their collector; the evidence was sufficient to justify the jury in finding that his employers ratified all that he had done in his efforts to collect or to get back their property.

Appellants also contend that plaintiff is concluded by R. O. Patterson's statement, made when called by her as if under cross-examination, that he acted on his own behalf and not for his employers, in making the arrest, citing Dunmore v. Padden, 262 Pa. 436, and kindred cases. But the contention is not applicable to this record. While of course the burden of proving agency was on plaintiff, and though she would have been concluded by the statement referred to if there were no other evidence in the case on the subject, there is the evidence we have referred to; it is in the record

and from all the evidence we determine whether there is evidence on the subject and whether it is sufficient to sustain the verdict. Merely calling the opposite party as if for cross-examination under the statute does not disable one from impeaching his testimony by other witnesses, nor does it deprive one of the benefit of other testimony in the record whether given by the same party or by other witnesses.

Appellants contend that the amount of the verdict—$2,029.33—is excessive. Though it may seem large, it is not so clearlyexcessive as to come within the rule permitting us to set it aside on that ground: Gail v. Phila., 273 Pa. 275, 278. The case was submitted to the jury in an adequate charge and the opinion written by the learned trial judge pursuant to Rule 58 shows the case was carefully considered by him. If there is an element of punitive damages reflected in the verdict, we cannot say, on a consideration of the evidence in the record, that it does not belong there. "The purpose of a criminal prosecution is to punish the offender for violating the laws of the Commonwealth, and not to enforce the payment of money nor, as in civil proceedings, to restore to the owner the property of which he has been defrauded. The criminal process of the court should not be invoked for any such purpose": Croasdale v. Von Boyneburgk, 206 Pa. 15.

Judgment affirmed.