## Farneth *v.* Commercial Credit Company, Appellant, et al.

Argued October 6, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Artemas C. Leslie,* with him *Harold R. Stadtfeld,* of *Leslie & Stadtfeld,* for appellant.

*John D. Meyer,* with him *John R. Keister* and *Fred B. Trescher,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 27, 1933:

This is an action to recover damages for malicious prosecution. The suit was commenced against Commer-

cial Credit Company and Earl E. Chrisman. The proceeding was abandoned against the latter, but continued against the Credit Company, resulting in a verdict in plaintiff's favor for $7,250, which the lower court refused to disturb and judgment was entered. The Credit Company appeals.

The Credit Company is a large corporation. Its headquarters are in Baltimore, with branches scattered throughout the country. One of them is located in Pittsburgh. This branch operates, under a manager, in a wide territory, taking in Western Pennsylvania and West Virginia. The business of the company is that of financing other concerns. In the present instance it financed the Mutual Appliance and Wall Paper Company, which was engaged in the sale of washing machines on the installment plan, with the plaintiff, Farneth, as its president. The method of financing pursued was, that bailment leases procured by the Mutual Company were assigned to the Credit Company, which thereupon advanced to the Mutual Company ninety per cent of the total payments to become due. The collections were then made by the Credit Company.

The criminal charge against plaintiff was that he had participated in fraudulently converting some twenty-six of the washing machines, title to which had been transferred to the Credit Company.

Questions arose in the Pittsburgh office of the Credit Company concerning the state of accounts between it and the Mutual Company, and Chrisman, who was employed by the Credit Company as an adjuster or collector, was assigned to make an investigation. In so doing, he visited lessees of the machines and discovered in certain instances they had been repossessed by plaintiff or his company without the knowledge of the Credit Company and without repaying to it the advances made. The machines had then been resold by plaintiff or his company. Upon ascertaining these facts Chrisman made a report to the Credit Company and by direction of the

manager of the Pittsburgh office, one Brashears, he consulted an attorney in Westmoreland County, where the Mutual Company was located, and was advised by the attorney that the conduct of plaintiff made him liable to criminal prosecution. Acting upon this advice, Chrisman made twenty-six informations against plaintiff before a justice of the peace. These he signed, "Commercial Credit Co. Earl E. Chrisman." Plaintiff was arrested, had a hearing, was committed to jail in default of $15,000 bail, and remained in custody until the following day, when his bail was reduced to $4,000, and he was released. He was indicted in the Quarter Sessions of Westmoreland County on thirty-one indictments. On his trial he was acquitted by the court's direction. The costs, amounting to about $3,000, were placed by the jury on Chrisman, who was subsequently taken into custody for nonpayment thereof. Demand for payment of the costs was also made by representatives of the county upon the Credit Company, which thereupon retained counsel in Westmoreland County to represent it in settling the costs. As a result of his efforts, they were reduced to $2,000, which sum was paid to the county by the attorney representing the Credit Company.

The plaintiff did not show that any officials of the Credit Company in Baltimore authorized Chrisman to institute the prosecution. On the company's behalf it was denied, not only that its officials in Baltimore authorized the prosecutions, but that they knew anything about them. We think, however, that this cannot relieve appellant of responsibility, provided its manager at the Pittsburgh branch either authorized, aided, or ratified the criminal proceeding. In this day of large corporations which carry on business through numerous branches with managers possessing almost plenary power to act in matters affecting the company and its interests, it would not do to hold, if criminal proceedings are improperly brought or aided or ratified by the manager of such a branch, that the corporation would not be

responsible for his acts. The ruling should be as in other matters in which he acts in its behalf under the authority implied by this representation.

The branch under Brashears was to a great degree independently functioning in an orbit of its own as appears by the following circumstances: Separate bank accounts upon which checks were drawn were kept by the branch; contracts with dealers were made by this branch without any consultation with Baltimore; attorneys were employed by this office, sometimes with and sometimes without consultation with the main office; a complete set of records and accounts were kept by this office; civil suits for the collection of claims were instituted by the Pittsburgh office without consultation with Baltimore.

If the plaintiff's case depended upon the giving by appellant of specific power to Chrisman to prosecute, we would be bound to say that plaintiff's case falls. That, however, is not the basis of his claim. His claim is that, whether Chrisman was empowered to prosecute or not, appellant, through Brashears, ratified his acts.

This brings us to the point of reviewing what was said and done in the Pittsburgh branch in connection with the prosecutions, in order to understand what the officials knew and approved. Those there employed who were called as witnesses, including the manager, testified that they had no authority to begin criminal proceedings in any case and that they had not authorized Chrisman to do so. Chrisman said he had begun the proceedings without authority from any one else connected with the company, after being advised by the attorney that plaintiff's acts made him criminally responsible. It was testified by Chrisman, as before stated, that he was directed to the attorney by Brashears, manager of the Pittsburgh branch. Brashears was in general charge of this branch of defendant's business and knew about the disputed claims between Farneth and his company. Chrisman testified that he reported the ad-

vice of counsel to Brashears and told him that counsel advised criminal prosecution. He said Brashears did not tell him to begin criminal proceedings or to refrain from doing so; that he, Brashears, left it up to him, Chrisman.

Belton, an employee in the Pittsburgh office, said to Farneth: "You are going to pay the account or we will put you in jail. That won't be a very nice place to spend the rest of your days." This was said in the presence and hearing of Brashears and Guckert, another employee. "Brashears said he would have to back up Belton and Guckert; there was nothing else for him to do. That they were his people and he would have to back them up."

It was shown that the Pittsburgh branch furnished data to the justice of the peace to aid him in making out the informations, that employees of the branch attended the hearing and the trial in court, and that the company, through its main office, paid the costs imposed on Chrisman after he had communicated to the Pittsburgh office the fact that he was in durance because of their nonpayment. It also appeared that counsel who represented the Credit Company at the trial of this case paid the fees of the attorney who advised Chrisman.

Where the unauthorized act of an agent or servant is performed with the knowledge and apparent approval of those authorized to represent the principal, the latter will be bound thereby; and, where the circumstances justify, a principal may be held liable for a wrongful arrest and imprisonment made by his agent, even though the principal gave no direct authority to make the arrest: Keidel v. Baltimore & Ohio R. R. Co., 281 Pa. 289. In that case, it is said, with great pertinence to the one at bar (page 294): "While no direct authority was shown to have been given by it [the railroad company] to the police captain to make this particular arrest, it is clear that a grant of authority can be implied where the circumstances justify it, and that this was a question for

the jury. ...... It put its whole case in his hands, and made no attempt to control the 'general authority' given to him, nor to state what he should do in the course of the proposed 'further investigation.' ...... They did not object to what was done, although it was clear that no 'conspiracy' was shown; on the contrary, they assisted in the commission of the wrong. This made them and their principal liable."

On the facts appearing, the instant case is quite similar to Shields v. Patterson, 97 Pa. Superior Ct. 398, in which the opinion was written by our Brother LINN, then a member of the Superior Court. There, responsibility for the prosecution out of which the case arose was denied by two of the defendants. It was said: "The two partners contend that they had no part in the prosecution, and that judgment should be reversed as to them. ...... It [the argument of appellants' counsel] is based on the theory that R. O. Patterson, the credit manager, acted without authority express or implied in conducting the prosecution. ...... If there could be any doubt about the sufficiency of the evidence of the scope of his [the credit manager's] general authority as indicated by what he did prior to the arrest (though we think there is none), it is removed by his evidence quoted describing that his employers were informed and did not disapprove; their attitude toward the matter, on being advised, reflects a flood of light on the scope of his authority as their collector; the evidence was sufficient to justify the jury in finding that his employers ratified all that he had done in his efforts to collect or to get back their property."

The case turns, not on the scope of Chrisman's agency, but on that of Brashears. "The liability of the principal for the act of his agent in instituting an unfounded prosecution is governed by the general principles of agency": Markley v. Snow, 207 Pa. 447, 454. We are of opinion that Brashears's agency was broad enough, from

the position he held, to fix the appellant with liability: Shields v. Patterson, supra.

Where a corporation has intrusted a manager with the general supervision of a particular branch of its business, it invests him with the power of a general agent, co-extensive with the business intrusted to his care, and is bound by his contracts on its behalf made within the apparent scope of his authority: Empire Implement Mfg. Co. v. Hench, 219 Pa. 135. Where the authority of such an agent is not limited in writing, the scope of the agency is a question for the jury: Edwards and Strong v. Power Gasoline Co., 109 Pa. Superior Ct. 253.

It is urged upon us that it was improper for the trial court to admit evidence showing that the costs in the criminal proceedings were paid by the Credit Company. In some situations, the receipt of such evidence to fix liability for damages on the payer of the costs would be unwarranted, as where the payer was a mere volunteer to relieve the one on whom they were imposed. Here, however, when the previous conduct of the manager of the district is taken into account, evidence of the subsequent payment of the costs by the Credit Company was properly received as adding to the recognition by the company of its liability for Chrisman's acts.

There is evidence which is quite convincing that the real purpose of bringing the prosecution was to collect the debt which was thought to be due by the Mutual Company to the Credit Company. As has been stated above, Farneth was called into the Pittsburgh office, where, in the presence of Brashears, the manager, he was told that, if he did not pay the indebtedness of the Mutual Company, he would go to jail. The testimony also discloses that Chrisman and other agents of the defendant, both prior to the arrest of plaintiff and following it, and prior to the trial in court, offered to settle the criminal case upon payment of $3,000 by Farneth to the defendant. Substantially the same offer was made to the father of the present plaintiff in an effort to force settle-

ment, with threats of prosecution and imprisonment if the same was not made. This evidence was objected to as inadmissible. We think it was clearly competent. Nothing is better established than that a criminal prosecution brought for the purpose of collecting a debt is prima facie evidence of a want of probable cause and of malice, and will support an action for malicious prosecution, shifting to the defendant the burden ordinarily on the plaintiff: MacDonald v. Schroeder, 214 Pa. 411; Schofield v. Ferrers, 47 Pa. 194; Shields v. Patterson, supra; Edwards v. Stull, 82 Pa. Superior Ct. 456.

We are unable, as was the court below, to find probable cause for certain of the prosecutions. In the light of the situation which the testimony shows, the court properly ruled as a matter of law that there was no probable cause as to those which indisputably showed nothing against the plaintiff, and, as to the others, in submitting them to the jury for its determination on the question of probable cause: Taylor v. American International Shipbuilding Corp., 275 Pa. 229. The defendant offered evidence to show that the prosecutions were instituted upon the advice of counsel. In itself, this is not a complete defense. It must further be shown that a full disclosure of the facts was made and that good faith was exercised in seeking the advice. Our cases do not appear to be in complete harmony on the question whether the advice of counsel sought in good faith and given and acted upon after full disclosure of all the facts is a complete defense.* We need not trouble ourselves with the subject at this time. There was considerable question here whether full disclosure was made to counsel and the court was justified in submitting the question to the jury under instructions which we find to be correct.

It is argued by appellant that Chrisman's agency was established only by his declarations and that they were

---

* Compare Muir v. Hankele, 273 Pa. 231; Aland v. Pyle, 263 Pa. 254; and see 38 C. J. 428, note 40, and cases there cited.

inadmissible to prove it. This would undoubtedly be true if that had been the purpose of their introduction; but, as was observed by the court below, the declarations were admitted, not to establish agency, but to show malice.

While the verdict is a large one under the circumstances shown, we are not prepared to say that it is so excessive as to warrant our interference with it. In cases of this character, the trial courts should exercise the soundest kind of judgment in controlling verdicts. The trial judge seems to have carefully considered the amount of the award and reached the conclusion that it was warranted, taking into account plaintiff's expenditures, his state of ill health brought about by the humiliation of his arrest and imprisonment, his trial on such a large number of indictments, and that he was entitled to recover punitive damages.

There are other questions raised by appellant which become immaterial in view of our determination on the main issue. We discover no reversible error in the record.

Judgment affirmed.