## Payne, Appellant, *v.* East Liberty Spear Company.

Argued April 10, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

102

*John A. Metz,* with him *Nathan Holstein* and *John A. Metz, Jr.,* for appellant.

*David M. Harrison,* for appellee.

OPINION BY MR. JUSTICE STERN, June 26, 1936:

Plaintiff leased some articles of household furniture and equipment from defendant. After making payment of a substantial part of the rentals, he fell into arrears. Defendant issued a writ of replevin, and its employee, one Collins, went with the deputy sheriff to see that the goods were obtained. Collins was in defendant's collection department, and testified that it was among his duties to go out with the sheriff when a replevin was issued and "get the goods." According to plaintiff's testimony, all the leased goods were on his premises when the writ was executed, but Collins and the deputy sheriff asserted that they could not locate some of the articles. Collins reported this to one Dalmasse, who was defendant's credit manager. Dalmasse told Collins he should make further inquiries as to the missing goods. Collins did so and then swore out a warrant for plaintiff's arrest on the charge of fraudulent conversion under the Act of May 18, 1917, P. L. 241. At the hearing before the alderman, Dalmasse appeared as a witness. Plaintiff stated that the goods were all in his home and that defendant was free to take them at its pleasure. The alderman then inquired of Dalmasse what he desired done in the matter, and the latter stated that he wanted plaintiff put in jail. The alderman thereupon committed him and the plaintiff remained in confinement for two days; then, at Dalmasse's suggestion, Collins went to have him released but found that he had just been freed on bail. The criminal proceedings were terminated at Collins's request; the indictment was ignored by the grand jury, and the costs placed on the prosecutor. Meanwhile the ·"missing" goods were taken by the deputy sheriff under

the writ of replevin on a second visit to plaintiff's home. Plaintiff brought the present action for malicious prosecution. The jury rendered a verdict in the sum of $3,160. The court below discharged defendant's rule for a new trial but entered judgment n. o. v. in its favor on the ground that there was not sufficient evidence to show that either Collins or Dalmasse was authorized by defendant to institute the criminal prosecution against plaintiff.

In the leading case of *Markley v. Snow*, 207 Pa. 447, 451, it was said—and this correctly states the law not only of Pennsylvania but of other jurisdictions generally: "Undoubtedly a principal may be held liable for the act of his agent in instituting a malicious prosecution. But the act of the agent becomes that of the principal only when expressly authorized, or when his authority to act may fairly be inferred from the nature and scope of the employment. Generally the duty of superintendence does not carry with it the duty to arrest or prosecute. The inference of authority to do either does not arise from the mere fact of the agency. The authority may be implied when the arrest is made by the agent in the absence of the principal for the protection of property that is in danger, or in some cases it has been inferred when the arrest was to recover the property back, or where the crime was at the time being perpetrated. But where the act is done for the punishment of the supposed criminal, or for the vindication of the law, it is not the act of the principal and does not subject him to liability." To the same effect see *Fletcher, Cyclopedia of Corporations,* volume 10, section 4885; 77 *A. L. R., Annotation,* page 927.

It is unlikely that general authority to institute criminal prosecutions would be given *expressly* to any particular employee by corporate authority, nor is it necessary to show express authorization. It is sufficient if the arrest was made or instigated by an agent in the course of his employment where there has been entrusted

to such agent the duty of protecting his employer's property or obtaining its recovery.

Collins was employed not only to collect bills but to assist the sheriff in replevin proceedings in repossessing leased articles. If, finding that any of the goods were missing, he instituted criminal proceedings against the lessee, it might be inferred that the object of such proceedings was to compel the accused to deliver possession of the articles sought.

Plaintiff's case, however, does not rest solely upon the acts of Collins, and it is not necessary therefore to decide whether the case should have been submitted to the jury if it depended merely upon the question of Collins's authority. Plaintiff's position is fortified by the testimony regarding Dalmasse, who was Collins's superior. He stated that he was defendant's "credit manager." He participated in the criminal proceedings brought against plaintiff, partly by having conversations on the subject with Collins and partly by appearing before the alderman and requesting him to imprison plaintiff. A jury might conclude that, as credit manager, he was at the head of the department of defendant's business which was charged inter alia with the enforcement of the obligations of defendant's customers to make payments of rentals or to return the property. In the case of a similar "credit manager" the Superior Court said in *Shields v. Patterson,* 97 Pa. Superior Ct. 398, 404: "While the mere fact of agency is not enough to render his employers liable, there is sufficient evidence to enable the jury to find that what he did to obtain payment of the balance due his employers, or to recover their property, was clearly done in the course of his employment—that is, within the express or implied authority conferred on him by them."

In *Farneth v. Commercial Credit Co.,* 313 Pa. 433, 436, it was said: "The plaintiff did not show that any officials of the Credit Company in Baltimore authorized Chrisman to institute the prosecution. . . . We think,

however, that this cannot relieve appellant of responsibility, provided its manager at the Pittsburgh branch either authorized, aided, or ratified the criminal proceeding. In this day of large corporations which carry on business through numerous branches with managers possessing almost plenary power to act in matters affecting the company and its interests, it would not do to hold, if criminal proceedings are improperly brought or aided or ratified by the manager of such a branch, that the corporation would not be responsible for his acts. The ruling should be as in other matters in which he acts in its behalf under the authority implied by this representation." And again, page 440 : "Where a corporation has intrusted a manager with the general supervision of a particular branch of its business, it invests him with the power of a general agent, coextensive with the business intrusted to his care, and is bound by his contracts on its behalf made within the apparent scope of his authority. . . . Where the authority of such an agent is not limited in writing, the scope of the agency is a question for the jury." While this case deals with the manager of a branch store, its principle is logically applicable with almost equal force to the manager of a department of a business, even though the entire enterprise be conducted at a single location. The ruling in the *Farneth* case is cited with approval and followed in *Groda v. American Stores Co.,* 315 Pa. 484, 488. See also *Kelly v. Newark Shoe Stores Co.,* 190 N. C. 406; *Mosely v. J. G. McCrory Co. of W. Va.,* 101 W. Va. 480; *McCrory Stores Corporation v. Satchell,* 148 Md. 279. It may be noted that defendant did not see fit itself to produce any testimony in regard to the authority of Collins or Dalmasse, although the necessary knowledge on that subject was, of course, wholly within its possession.

Plaintiff and his wife testified that the goods had not been removed or secreted by him but were in plain view on his premises when the deputy sheriff came there; this was sufficient evidence of lack of probable cause for sub-

mission to the jury. Moreover, the jury could infer from the testimony that the object of the criminal prosecution was to collect the debt or obtain the return of the property; a prosecution so motivated constitutes prima facie evidence of malice and want of probable cause: *Farneth v. Commercial Credit Co.*, supra; *Randall v. Fenton Storage Co.*, 117 Pa. Superior Ct. 212, 216.

While, for the reasons thus indicated, we are of opinion that defendant's motion for judgment n. o. v. should not have been granted, we think that its rule for a new trial should have been made absolute. It was error to have permitted plaintiff to call Dalmasse as for cross-examination. He was not a director nor an officer of defendant corporation *(Amsterdam v. E. I. DuPont de Nemours Powder Co.*, 62 Pa. Superior Ct. 314, 328), nor was his *interest* adverse within the meaning of the Act of March 30, 1911, P. L. 35 *(Dinger v. Friedman,* 279 Pa. 8, 15) ; neither were plaintiff's rights in this respect enlarged by reason of the fact that Dalmasse executed the affidavit of defense: *Jordon v. Clearfield County,* 107 Pa. Superior Ct. 441, 448.

While the printed record does not contain any evidence bearing upon the question of the damages sustained by plaintiff, the verdict as rendered seems to be a large one under the circumstances. The jury itemized it as including $2,055 for "compensation," $560 for "humiliation," and $545 for "smart money." An award for "humiliation" is not to be allowed in addition to, but only as a part of, "compensation." Furthermore, there seems to have been a claim by plaintiff for damages sustained by reason of his having contracted pneumonia as a result of confinement in jail; such a claim, to be successful, should be sustained by convincing proof of a causal relationship between the imprisonment and the illness suffered.

The order of the court granting judgment n. o. v. in favor of defendant is reversed. Defendant's rule for a new trial is reinstated and herewith made absolute.