HORNIN v. MONTGOMERY WARD & CO.,
Inc.
No. 7590.
Circuit Court of Appeals, Third Circuit.
May 14, 1941.

Laurence E. Oliphant, Jr., and Stuart S. Ball, both of Chicago, Ill. (F. T. Barrett, of Chicago, Ill., and Ralph J. McAllister, of McKeesport, Pa., on the brief), for appellant.

Ben Paul Brasley, of Pittsburgh, Pa. (Brasley, Rubin, Balter & Cole, of Pittsburgh, Pa., and Robert Palkovitz, of McKeesport, Pa., on the brief), for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

The plaintiff sued to recover damages for malicious prosecution for which the defendant was allegedly responsible. The jury returned a verdict for the plaintiff whereon the trial court entered judgment in a reduced amount pursuant to a remittitur filed by the plaintiff in compliance

with the condition attached to the court's refusal of the defendant's motion for a new trial. A motion by the defendant for judgment on a question of law reserved was also denied. From the judgment entered the defendant took the present appeal.

The facts giving rise to the plaintiff's action show the following. During the time of the matters herein complained of, the defendant company owned and operated a department store in McKeesport, Pennsylvania, where Hornin, the plaintiff, was employed and had been so employed for about three years. A number of thefts of merchandise from the store having occurred, the apprehension of the culprits as well as the prevention of similar occurrences in the future was a matter of concern to the defendant company and to the manager of its store, one Stark. On June 22, 1938, the janitor of the store informed Stark that several well wrapped packages had been discovered in a coal bin in the basement. Stark immediately reported this fact to the local police, and two officers were assigned to lie in wait for the person for whom the packages had presumably been secreted in the coal bin. Early the following morning (June 23) one Kasmarek was taken in the act of trying to enter the cellar of the store. Stark and the police officers, being of the opinion that Kasmarek, who was not an employee of the store, had an accomplice among the defendant's employees, questioned Kasmarek extensively in such regard at the police station. Finally about 10:30 P. M. on the night of June 23 a police officer called at the home of the plaintiff, who had been absent from the store on vacation since June 14, and asked him to go to the police station. Hornin voluntarily did so. Upon arriving at the station, he found Stark and another police officer there. He was told that Kasmarek had implicated him and had stated that the two of them had arranged for the theft at a meeting in a public bar on June 13 or 14. The last thing Hornin had done at the store before leaving on his vacation was to take inventory in his department with the help of his assistant. After the inventory had been completed, Hornin and his assistant had left the store together and did not part until within a block of the plaintiff's home. From that time the plaintiff was not at the store except for one intervening visit as a customer. Nor did he possess a key to the store. It was developed from the janitor that the package had been placed in the cellar while the plaintiff was on his vacation. Although all of these facts were known to Stark, he nevertheless directed the plaintiff's detention as a suspect.

The plaintiff spent the night of June 23 in jail, not being permitted to communicate with anyone or to apprise his family of his whereabouts. At a hearing on the following morning before a committing magistrate and in response to the magistrate's inquiry as to whether there was to be a prosecution of Hornin, Stark answered "We do". The plaintiff was then held for court. His indictment followed and the case came on for trial in the criminal courts of Allegheny County, Pennsylvania, on October 13, 1938. After a jury had been impanelled and the case was ready for trial, Kasmarek, the prosecution's chief witness, showed strong reluctance, if not positive unwillingness, to take the witness stand. It appears from the evidence that he was finally induced to testify by threats of Stark that if he would not give evidence against the plaintiff "his [Kasmarek's] girl", who was an employee of the store, would be implicated. Kasmarek succumbed and took the stand. After having testified on direct examination in support of his assertion of the plaintiff's complicity in the crime, he broke down completely on cross-examination and stated that he had been compelled to implicate the plaintiff because of Stark's threats. The plaintiff's acquittal followed. As a consequence of the prosecution, the plaintiff sought compensatory damages for his inability to find gainful employment and for illness, counsel fees and embarrassment, all occasioned by the prosecution, and punitive damages.

Upon the defendant's motion for judgment n. o. v., the findings implied by the jury's verdict require that the evidence in the case as well as the reasonable inferences to be drawn therefrom be viewed in the light most favorable to the plaintiff. Cranston v. Baltimore & O. R. R. Co., 3 Cir., 109 F.2d 630; Muehlhof v. Reading Co., 309 Pa. 17, 19, 162 A. 827. The court's refusal of the defendant's motion for a new trial was not strongly urged here as error. In any event the motion was without merit. The trial court's very substantial reduction of the jury's verdict, to which the plaintiff assented, more than took care of any possible harm to the defendant through the plaintiff's failure to prove at trial the defendant's financial

worth. There is one other question relating to the motion for a new trial with respect to the competency of evidence. This will be considered in connection with the defendant's motion for judgment as it goes to Stark's conduct and is material to a want of probable cause for the institution of the criminal proceedings against Hornin.

The questions presented by this appeal are:

(a) Did the plaintiff sustain his burden of showing the necessary elements of actionable malicious prosecution; and

(b) Was there sufficient evidence of Stark's authority to bind the defendant company with the institution and maintenance of the criminal proceeding?

■ Under the law of Pennsylvania, which governs the rights of the parties to the present suit, the elements necessary to support an action for malicious prosecution are (1) the termination in the complainant's favor of the criminal proceedings involved in the action, (2) want of probable cause for the criminal proceedings, and (3) malice. Stinson v. Smith et al., 329 Pa. 177, 181, 182, 196 A. 843; Altman v. Standard Refrigerator Co., Inc., 315 Pa. 465, 477, 173 A. 411; Painter v. Roth et al., 118 Pa.Super. 474, 477, 180 A. 49; Randall v. Fenton Storage Co. (Randall v. Seligman) (two cases), 117 Pa. Super. 212, 214, 177 A. 575. That the prior criminal proceedings in this case terminated in Hornin's acquittal is not open to dispute; and it is also clear that that fact was both competently and fully established at the trial below.

■ Of the two remaining elements essential to the action, viz., want of probable cause and malice, it is legally permissible for the jury to draw an inference of malice from a finding of want of probable cause where the competent evidence is sufficient to support that finding. Herr v. Lollar, 268 Pa. 109, 112, 110 A. 742; Smith v. Walter, 125 Pa. 453, 468, 469, 17 A. 466; Humphreys v. Mead, 23 Pa.Super. 415, 418, 419. As the jury's verdict in the instant case implies a finding of want of probable cause, the inquiry here is whether there was sufficient competent evidence in such regard to support the jury's verdict. If there was, then it follows as a matter of law that the jury was entitled to infer malice. The verdict likewise implies that the jury so inferred.

■ As late as Altman v. Standard Refrigerator Co., Inc., supra, 315 Pa. page 480, 173 A. page 417, the Supreme Court of Pennsylvania quoted with approval its earlier definition of probable cause as stated in McClafferty v. Philp, 151 Pa. 86, 24 A. 1042, where it was said that "'Probable cause' is generally defined to be a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man (in the same situation) in believing the party is guilty of the offense." It was, therefore, the duty of the court below, as it is this court's duty on appeal, armed with the above test and cognizant of the facts which the jury could and presumably did find, to determine whether the conclusion of a want of probable cause could be found by the jury. See Altman v. Standard Refrigerator Co., Inc., supra, 315 Pa. at page 482, 173 A. 411.

That Stark acted against Hornin without probable cause is clearly deducible from the uncontradicted evidence. The packages had been placed in the coal bin when Hornin was absent from the store on vacation. He had had no ascertained opportunity of entering the store, extracting the goods from the stock, neatly wrapping them in packages and placing them where they were discovered in the basement. Whoever Kasmarek's accomplice was, that person necessarily had to have access to and freedom of movement within the store which, as the evidence plainly shows and as Stark should have known, Hornin did not have. The fact that Hornin had been a loyal and faithful employee of the defendant for three years apparently meant nothing to Stark. Hornin's past service and reputation of itself especially called for Stark's exercising ordinary prudence before placing the plaintiff's liberty, his standing in the community and his family's welfare in jeopardy.

■ The evidence not only justifies a finding that Stark, by the exercise of ordinary prudence, should have known that he did not have probable cause for proceeding against Hornin, but it further indicates that Stark was actually aware of the want of probable cause. Kasmarek's repudiation, before trial, of his implication of Hornin directly apprised Stark of the absence of any credible evidence to connect Hornin with the theft. Yet Stark by threats forced Kasmarek to give testimony which, had it been unrepudiated,

would have been sufficient to convict Hornin. This, Stark did with a wantonness and disregard of the rights of others which plainly indicates that the want of probable cause was wholly unimportant to him. He apparently felt the need of an example for disciplinary purposes at the store, and the means by which he obtained his victim mattered not at all. The defendant argues that the disclosure of Stark's threats in order to compel Kasmarek to testify cannot be used substantively in this case as the evidence was hearsay at the trial below. It was hearsay, but the defendant waived the inadmissibility of the evidence by failing to object to it when it was offered and received at trial. The defendant is not entitled to another opportunity to retry its case by objecting in an appellate court to evidence not objected to below. · Having been received without objection, the evidence, which was both relevant and material, has the value of testimony directly elicited. Harrah v. Montour Railroad Co., 321 Pa. 526, 528, 184 A. 666; Poluski v. Glen Alden Coal Co., 286 Pa. 473, 476, 133 A. 819; see Henry, Pennsylvania Trial Evidence (3rd ed.) § 270. And it may be so considered by a federal court sitting in Pennsylvania. Federal Rules of Civil Procedure, Rule 43(a), 28 U.S.C.A. following § 723c. See also Stoner v. New York Life Insurance Co., 311 U.S. 464, 61 S.Ct. 336, 338, 85 L.Ed. ——. The evidence fully justified the submission to the jury of the question of probable cause and malice.

■ It is the defendant's further contention that its manager, Stark, lacked authority to institute the criminal proceeding. In Pennsylvania it has been held that where an agent institutes an unfounded prosecution his principal's liability is to be determined by the general principles of agency. Markley v. Snow, 207 Pa. 447, 445, 56 A. 999, 64 L.R.A. 685; Farneth v. Commercial Credit Co., 313 Pa. 433, 436-440, 169 A. 89; Groda v. American Stores Co., 315 Pa. 484, 488, 173 A. 419, 94 A.L.R. 738. Express authority of the agent to institute the proceeding is not necessary. Payne v. East Liberty Spear Co., 323 Pa. 100, 103, 104, 185 A. 853. Stark acted within the course of his employment. There was entrusted to him the duty of protecting his employer's property. With the extension of the same corporate ownership of stores or businesses located in many places, wide discretion must necessarily be lodged in the resident local managers. They act in such a varied capacity as veritably to be vice-principals toward those with whom they are required to deal. The principal cannot, therefore, escape liability for a manager's exercise of this discretion by pleading a lack of that authority which the principal finds advantageous to repose in its local representative for its own service. The defendant concedes that Stark was the "Manager of its [McKeesport] store". His duty to protect his corporate employer's property has never been questioned. And there is also evidence in the case that the defendant company's principal or main office knew of Stark's action with respect to the institution and maintenance of the criminal proceedings almost from the outset and never made any objection thereto. Under the law of Pennsylvania, it is not open to doubt that the question of Stark's authority was a matter for the jury under the evidence in this case.

■ The defendant incidentally contends that it was the chief of police of McKeesport rather than Stark who instituted the criminal proceedings. The police officer was, in fact, the nominal prosecutor. But, it is sufficient to bind Stark, and thereby his principal, that he was the instigator of the criminal charges against Hornin. Stark's appearance as a formal party was not essential to his role of real prosecutor. Baker v. Moore, 29 Pa.Super. 301, 305-306; see Farneth v. Commercial Credit Co., supra, 313 Pa. at page 436, 169 A. 89.

■ We would have been warranted in dismissing this appeal summarily because of the defendant's failure to comply with the Rules of this court relative to the printed appendix on appeal. For instance, none of the evidence produced by the plaintiff has been included in the appendix, yet the appellant alleges that the evidence is insufficient to support the jury's finding of Stark's authority. See Rule 26, Par. 3(e). We feel, however, that the case calls peculiarly for its disposition on the merits to the end that the redress to the plaintiff for the wrong which the defendant inflicted may not be open to the suggestion from anyone that it possibly rests upon unreviewable error. Consequently, we have gone to the typewritten transcript of the entire record below. After a careful study thereof we find that the case was fairly tried and submitted

and that the evidence is quite sufficient to sustain the jury's verdict. The trial court's action in conditioning its dismissal of the defendant's motion for a new trial upon the plaintiff's accepting a reduction in the jury's verdict was presumably taken because of a lack of any evidence as to the defendant's financial worth,—a matter material to the award of punitive damages in a substantial sum. However, the propriety of the court's action in such regard is not before us, as the plaintiff voluntarily acceded to the reduced verdict.

The judgment of the District Court is affirmed.